1  MICHAEL LOUIS KELLY (SBN 82063)
   Email: mlk@kirtlandpackard.com
2  BEHRAM V. PAREKH (SBN 180361)
   Email: bvp@kirtlandpackard.com
3  HEATHER M. PETERSON (SBN 261303)
   Email: hmp@kirtlandpackard.com
4  **KIRTLAND & PACKARD LLP**
   2361 Rosecrans Avenue, 4ᵗʰ Floor
5  El Segundo, California 90245
   Telephone: (310) 536-1000
6  Facsimile:  (310) 536-1001

7  *Lead Counsel for Plaintiffs*

8

9

10

11

12

13

14

15

16              UNITED STATES DISTRICT COURT

17            CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| 17 | |
| 18 **IN RE: POM WONDERFUL LLC MARKETING AND SALES PRACTICES LITIGATION** | Master File No.: 2:10-ml 2199-DDP (RZx) |
| 19 | [MDL No. 2199] |
| 20 This Document Relates To: All Actions | Assigned to the Hon. Dean D. Pregerson |
| 21 | **MASTER CONSOLIDATED COMPLAINT** |
| 22 | |
| 23 | |
| 24 | |

25

26

27

28

1  All Plaintiffs in the coordinated actions hereby adopt as the Master
2  Consolidated Complaint, for administrative purposes pursuant to Pretrial Orders No.
3  1 and 2, the complaint filed in the *Alexander v. POM Wonderful LLC* litigation,
4  attached hereto as Exhibit A.

5  Dated:  August 26, 2011                    RESPECTFULLY SUBMITTED,
6
7                                             **KIRTLAND & PACKARD LLP**
                                              Michael Louis Kelly
8                                             Behram V. Parekh
                                              Heather M. Peterson
9

10                                            By:   /s/ Behram V. Parekh
11                                                  BEHRAM V. PAREKH

12                                            *Lead Counsel for Plaintiffs*

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Master File No.: 2:10-ml 2199-DDP (RZx)          1                    MASTER CONSOLIDATED
                                                                              COMPLAINT

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT A

Michael Louis Kelly (SBN 82063)
mlk@kirtlandpackard.com
Behram V. Parekh (SBN 180361)
bvp@kirtlandpackard.com
Heather M. Peterson (SBN 261303)
hmp@kirtlandpackard.com
**KIRTLAND & PACKARD LLP**
2361 Rosecrans Avenue, Fourth Floor
El Segundo, California 90245
Phone: 310.536.1000
Facsimile: 310.536.1001

*Counsel for Plaintiffs John Alexander
and Melissa Espinoza, on behalf of
themselves and for all others similarly
situated*

FILED
2010 JAN 15 AM 10:43

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN ALEXANDER and MELISSA ESPINOZA, on behalf of themselves and all others similarly situated, <br><br> Plaintiffs, <br><br> vs. <br><br> POMWONDERFUL LLC, a Delaware Limited Liability Company, and DOES 1 to 10 inclusive, <br><br> Defendants. | Case No. CV 09-08182 DDP (RZx) <br><br> Assigned to Hon. Dean D. Pregerson <br><br> **CLASS ACTION** <br><br> FIRST AMENDED COMPLAINT FOR: <br><br> 1. **VIOLATION OF THE FALSE ADVERTISING ACT (BUSINESS AND PROFESSIONS CODE §17500 et seq.);** <br><br> 2. **VIOLATION OF THE UNFAIR COMPETITION LAW (BUSINESS AND PROFESSIONS CODE §17200 et seq.); and** <br><br> 3. **VIOLATION OF THE CONSUMER LEGAL REMEDIES ACT (CIVIL CODE §1750 et seq.).** <br><br> **JURY TRIAL DEMANDED** |

# BY FAX

1

FIRST AMENDED COMPLAINT

1    Plaintiffs, acting for themselves and for all persons who purchased POM

2    Wonderful pomegranate products during the relevant time frame (collectively

3    "Plaintiffs"), allege as follows:  Plaintiffs' allegations are based on the investigation

4    of counsel, including but not limited to reviews of advertising and marketing

5    material, public filings, articles, judicial actions, and other publicly available

6    information, and thus on information and belief, except as to the individual actions

7    of Plaintiffs, as to which Plaintiffs have personal knowledge.

8

9    ## Jurisdiction and Venue

10       1.    This Court has diversity jurisdiction over this class action pursuant to

11   28 U.S.C. § 1332 as amended by the Class Action Fairness Act of 2005 because the

12   matter in controversy exceeds $5,000,000, exclusive of interest and costs, and is a

13   class action in which some members of the class are citizens of different states than

14   the Defendant.  See 28 U.S.C. § 1332(d)(2)(A).

15       2.    This Court also has personal jurisdiction over Defendant because

16   Defendant is authorized to do business, and currently does business, in this state.

17       3.    Venue is proper in this jurisdiction pursuant to 28 U.S.C. § 1391

18   because Defendant POMWonderful LLC is headquartered in this District and is

19   subject to personal jurisdiction and a substantial portion of the conduct complained

20   of herein occurred in this District.

21   ## The Parties

22       4.    The individual plaintiffs, John Alexander and Melissa Espinoza

23   ("Individual Plaintiffs") are, and were at all relevant times, residents of the State of

24   California, have purchased one or more POM Wonderful products, and have

25   suffered harm as a result.

26       5.    Plaintiff Alexander purchased POM Wonderful products from retail

27   stores on numerous occasions, starting in the summer of 2009.  He purchased and

28   consumed the products because he saw and relied on the purported health benefits

2

FIRST AMENDED COMPLAINT

1  described on POM's website, advertising, and in the stores where he purchased

2  POM products, including product labeling.  Mr. Alexander further specifically relied

3  on POM's claim regarding $25 million in "bullet proof" research as supporting the

4  purported health benefits advertised by POM and POM's advertised heart benefits.

5  Mr. Alexander has been damaged in that he purchased POM products and has lost

6  money he spent purchasing such products while being misled about their benefits

7  and he would not have otherwise purchased such products or not for the price he

8  paid.

9        6.     Plaintiff Espinoza purchased POM Wonderful products from retail

10  stores on numerous occasions, starting in early 2009.  She purchased and consumed

11  the products because she saw and relied on the purported health benefits described

12  on POM's website, advertising, and in the stores where she purchased POM

13  products, including product labeling.  Ms. Espinoza also specifically relied on

14  POM's claims regarding the millions of dollars spent on research supporting those

15  purported health benefits, the superior antioxidant content of POM products as

16  compared to other products, and that research had showed that POM products had

17  more health benefits than red wine.  Ms. Espinoza has been damaged in that she

18  purchased POM products and has lost money she spent purchasing such products

19  while being misled about their benefits and she would not have otherwise purchased

20  such products or not for the price she paid.

21        7.     Defendant POMWonderful LLC ("POM") is a Delaware Limited

22  Liability Company headquartered at 11444 West Olympic Blvd., 10th Floor, Los

23  Angeles, California 90064.

24        8.     Each of DOES 1-10 is the agent, servant, partner, joint-venturer, co-

25  venturer, principal, director, officer, manager, employee, or shareholder of one or

26  more of its co-defendant(s) who aided, abetted, controlled, and directed or conspired

27  with and acted in furtherance of said conspiracy with one or more of its co-

28  defendant(s) in said codefendant(s) performance of the acts and omissions described

1   below.  Plaintiffs sue each of these Doe Defendants by these fictitious names

2   because Plaintiffs do not now know these Defendants' true names and capacities.

3   ## FACTUAL ALLEGATIONS

4       4.    POM produces, markets, and sells POM Wonderful brand pomegranate

5   juice, juice blends, teas, and extracts.

6       5.    Since 2002, POM has promoted the consumption of its POM

7   Wonderful brand 100% pomegranate juice products to consumers as having special

8   benefits relating to diseases and health-related conditions, including but not limited

9   to, for the prevention, mitigation, and/or treatment of prostate cancer, cardiovascular

10  disease, erectile dysfunction, and other age-related medical conditions.

11      6.    POM also has promoted the consumption of its POM Wonderful brand

12  100% pomegranate juice beverage product to consumers as an all-purpose health

13  elixir that can prevent and/or delay the effects of advancing age, prolong youth, and

14  prolong life.

15      7.    POM claims in its advertising that its POM Wonderful brand 100%

16  pomegranate juice beverage product is healthier than other beverages, including

17  other 100% juice beverage products.

18      8.    POM claims in its advertising that the juice from the "Wonderful"

19  variety of pomegranates used in POM's 100% pomegranate juice beverage products

20  has special antioxidant powers to protect health and prevent disease which are not

21  found in other foods or beverages, including the juice from other pomegranate fruit

22  varieties.

23      9.    POM claims in its advertising and product labeling that its health and

24  medical claims for its pomegranate juice are "backed by $25 million in medical

25  research," "backed by $25 million in bulletproof medical research," or "POM

26  Wonderful products are backed by $32 million in medical research" on the front

27  page of its current website.

28

10. POM's claims are not only that POM prevents and mitigates diseases, but that competent and reliable scientific evidence *proves* that POM pomegranate juice prevents and mitigates diseases, prolongs life, and has special antioxidant powers and health and medical benefits not available from other foods or beverages.

11. POM lacks competent and/or reliable scientific evidence for any of its disease-related and mitigation, treatment and/or prevention of disease claims, thus, POM's claims regarding these benefits are false and/or misleading.

12. In 2005, the National Advertising Division (NAD) of the Council of Better Business Bureaus found that the medical research POM relied on was inadequate to substantiate POM's claim that drinking eight ounces per day of POM pomegranate juice can reduce arterial plaque by up to 30% or prevent plaque build-up in healthy people.

13. In 2006, the NAD found that POM's research did not substantiate its claims that POM's juice contains "more naturally occurring antioxidants than any other drink," and "has more antioxidant power than any other drink," and that drinking its pomegranate juice can help prevent premature aging, cancer, heart disease, arterial plaque build-up, stroke, Alzheimer's disease, or any other disease.

14. In 2009, the United Kingdom's Advertising Standards Authority (ASA) "considered the evidence submitted by POM Wonderful to support the antioxidant benefits of pomegranate juice but concluded that it fell short of showing any direct relation between consuming the product and a longer life." As a result, the ASA found a POM advertisement, "and particularly the claim 'Cheat death,' misleadingly exaggerated the health benefits likely to be achieved by drinking the product."

15. POM lacks competent and/or reliable scientific evidence that consuming its pomegranate juice has meaningfully greater antioxidant potency and related health benefits than other juices, including other pomegranate juices.

## SPECIFIC FALSE CLAIMS MADE BY POM

A.    **POM Claims That Its Pomegranate Juice Has Medically Proven Benefits In The Mitigation, Treatment, And/Or Prevention Of Serious Chronic Diseases**

    i.    **POM Claims that Its Pomegranate Juice Is Proven to Prevent and/or Mitigate Atherosclerosis and Heart Attacks and Related Health Conditions**

16.    POM makes the following advertising claims for POM Wonderful pomegranate juice on its website and both in its print and in-store advertising:

- Medical research shows that drinking 8 ounces per day of POM pomegranate juice can result in improved blood flow to the heart;

- Medical research shows that drinking 8 ounces per day of POM pomegranate juice can decrease arterial plaque by 30% (on a website page depicting a bottle of POM hooked to an intravenous apparatus like a blood transfusion);

- POM Wonderful pomegranate juice is "heart therapy."

17.    The message of this POM advertising and promotion is that competent and reliable scientific research shows that consuming POM pomegranate juice prevents and/or mitigates atherosclerosis and reduces heart attacks.

18.    These claims are false and/or misleading.  In fact, competent and/or reliable scientific research does *not* establish that POM Wonderful brand pomegranate juice prevents and/or mitigates atherosclerosis or heart attacks under the conditions of use represented in POM's marketing claims.

    ii.    **POM Claims that Its Pomegranate Juice Is Proven to Prevent and/or Mitigate Cancer and Other Prostate Health Related Conditions**

19.    POM's website page entitled, "The truth about our pomegranates" claims, under the heading "Backed by Science," that "To date, numerous published

1  medical studies have documented the benefits of drinking pomegranate juice,
2  benefits that include improved … prostate health."

3      20.    One of POM's opening website animations begins with a comic-strip-
4  style message, "HURRY!  Prostates everywhere are in danger!"  Bottles of POM
5  juice then zoom across the screen and a new message then appears, issuing from a
6  POM bottle: "I'm off to save PROSTATES!"  This is accompanied by the tagline,
7  "The Antioxidant Superpower.  Learn about POM's promising health benefits."

8      21.    Clicking on the animation's "Learn about POM's promising health
9  benefits" link takes the viewer to POM's "Health Benefits" page which summarizes,
10  among other things, research purporting to show that consuming POM pomegranate
11  juice may slow the progression of prostate cancer.

12      22.    In combination, the animation and its associated links claim that
13  medical research establishes that POM juice rescues prostates from the danger of
14  disease – i.e., that POM pomegranate juice prevents or mitigates prostate disease.

15      23.    POM's website page on "Cancer" shows a bottle of POM juice with
16  the heading, "Cancer – Emerging Science" and the claim that antioxidants in POM
17  pomegranate juice and POM tea "might slow or help prevent the development of
18  cancer."

19      24.    A POM commercial states, "Pomegranates contain powerful
20  antioxidants needed to prevent cancer and disease" and depicts actors wearing white
21  lab coats consuming POM pomegranate juice as a convenient way to obtain these
22  cancer prevention benefits.

23      25.    These advertisements represent claims that medical research establishes
24  that consuming POM pomegranate juice mitigates, treats, and/or prevents prostate
25  cancer.

26      26.    These claims are false and/or misleading.  Contrary to POM's claims,
27  there is no competent and/or reliable evidence that POM pomegranate juice
28  mitigates, treats, prevents, or otherwise slows the progress of, or cures prostate

1   cancer or any other prostate disease.  POM's misleading claims that medical
2   research shows POM juice to be effective in mitigating, treating, and/or preventing
3   prostate cancer and other prostate disease are especially pernicious in view of the
4   prevalence and gravity of these diseases.

### iii.   POM Claims that Its Pomegranate Juice Is Proven to Prevent or Delay Aging

7   27.   POM's website page entitled "Health Benefits: Aging" advertises that
8   POM has been proven to maintain youth, defer aging, and prolong life.

9   28.   Other POM advertisements and promotional materials disseminated by
10  POM, including but not limited to in-store advertising, claim that POM juice
11  extends life, including advertisements bearing the following messages: '

12          "Cheat death."   [showing POM bottle wearing broken
13          hangman's noose]
14          "Death defying."
15          "Life support." [showing POM bottle hooked to IV unit]
16          "SAVING LIVES ... one mortal at a time."

17  29.   All of these advertisements constitute misleading claims that medical
18  research has shown POM pomegranate juice to be effective in slowing the effects of
19  aging, warding off death, and/or extending or prolonging life.  There is no
20  competent and/or reliable scientific evidence that consuming POM pomegranate
21  juice provides consumers with special benefits in delaying death and/or prolonging
22  life.

### iv.   POM Claims that Its Pomegranate Juice Is Proven to Prevent, Mitigate, and/or Cure Other Diseases

25  30.   Among other diseases and conditions discussed on its website, and in
26  its advertising and promotional materials, POM claims that scientific and medical
27  research proves that POM pomegranate juice lowers blood pressure.  POM's
28  website also claims disease benefits relating to Alzheimer's Disease, dementia,

1  arthritis, and diabetes, among others, as conditions treatable with POM pomegranate
2  juice.

3       31.    The references to various diseases and conditions on POM's website
4  and in its advertising and promotional materials, in the context of POM's constant
5  references to its pomegranate juice being "backed" by $25 million in bullet proof
6  medical research, are designed to, and do, communicate to consumers that drinking
7  POM pomegranate juice has been proven to have special benefits in mitigating,
8  treating and/or preventing age-related diseases, including arthritis, dementia,
9  Alzheimer's Disease, and diabetes.  All of these claims are misleading because there
10  is no competent and/or reliable scientific evidence, let alone "bulletproof" evidence,
11  that POM pomegranate juice mitigates, treats and/or prevents any disease or health
12  related medical condition.

13       32.    POM's other advertisements and promotions build on and implicitly
14  reference these specific disease prevention and cure claims by portraying POM
15  pomegranate juice as an all-purpose health elixir that has special power to prevent
16  and/or mitigate chronic diseases associated with aging, and thereby prolong life.

17       33.    For example, POM outdoor and/or poster advertisements contain the
18  following claims:

19            "Cheat death."   [showing POM bottle wearing broken
20            hangman's noose]
21            "Death defying."
22            "Decompress."   [showing POM bottle in blood pressure
23            testing device]
24            "Forever young."
25            "Health's Angel."
26            "Heart therapy."
27            "Holy Health!  $25 million in medical research."
28            "Life guard."

"Life preserver."

"Life support." [showing POM bottle hooked to IV unit to resemble a blood transfusion]

"Relax, you'll live longer."

"SAVING LIVES ... one mortal at a time."

"Lucky I have super HEALTH POWERS!"

"Survival kit."

34. On the front page of POM's website, the consumer is presented with one of a rotating series of animations. These each feature a bottle of POM juice in the guise of a super-hero character accompanied by the tagline "The Antioxidant Superpower" and accompanied by messages such as:

"Have no health fear ... POM IS HERE!"

"Risk your health in this economy!?!  NEVER!"

"Prostates everywhere are in danger ... I'm off to save PROSTATES!"

Each animation prompts viewers to follow a link to "learn about POM's promising health benefits," where the more detailed medical claims described in this Complaint are presented.

35. A POM print advertisement for POM pomegranate juice claims: "In a time of major health problems, one 16-ounce hero will unleash its **incredible healing powers**: POM Wonderful® 100% pure pomegranate juice.  Backed by an unheard-of $25 million in medical research, The Antioxidant Superpower® sweeps into action to help fight for heart and prostate health." (emphasis in original).

36. POM advertises that its pomegranate juice is "clinically tested."

37. POM advertises that its medical research is "bulletproof," which implies to consumers that the research conclusively proves the health benefits claimed by POM.

10

FIRST AMENDED COMPLAINT

38.   Even when not paired with an explicit medical claim, the claim that POM pomegranate juice is backed by, or is the subject of, "millions of dollars" worth of "medical" research and "clinical" testing communicates to consumers that POM pomegranate juice has medicinal benefits for the mitigation, treatment, and/or prevention of disease that are proven by competent and reliable scientific evidence.

39.   These advertisements, both independently and in the context of POM's more explicit disease prevention and cure claims, communicate to consumers that POM pomegranate juice is not just a food, but a medicine that is proven to ward off and slow the progress of serious and often fatal diseases.

**B.    POM Falsely and/or Misleadingly Claims That POM Wonderful 100% Pomegranate Juice Has Nutritional And Disease Related Benefits That Are Superior To Other Juices**

40.   POM prices its juice products at a higher price-point than comparable juices.

41.   A POM magazine advertisement in a 2009 issue of *Yoga Journal* claims: "Made with 100% pure pomegranate juice and fortified by $25 million in medical research, it's the only juice on the planet powerful enough to fight the good health fight."

42.   In this and other advertisements, POM claims that its pomegranate juice has been proven by medical research to offer disease-fighting benefits conferred by no other juice.

43.   This claim is false and/or misleading because there is no competent and/or reliable scientific evidence that POM pomegranate juice confers nutritional or disease-related benefits that other juices do not.

44.   POM also claims that its pomegranates are nutritionally superior to pomegranates used in other products. In a page entitled "Wonderfully Superior" on its website, POM claims that "Juice from Wonderful variety pomegranates is

11

1   extremely high in polyphenol antioxidants," implying that juice from other
2   pomegranates is not extremely high in polyphenol antioxidants.

3       45.   · POM also states, in discussing the "medical research" that supports its
4   disease-related claims, that:

> **All of these studies featured patients who drank POM**
> **Wonderful 100% Pomegranate Juice, not any other**
> **brands.**   Since POM is totally different from other
> pomegranate juices (see below), that means ours is the
> only one you can trust to deliver genuine pomegranate
> health benefits.

11       46.   POM further states, "Actually, we are the only pomegranate juice
12   backed by any medical research at all" and "all of the research has been done on
13   POM Wonderful 100% pomegranate juice." Those statements are misleading.

14       47.   Numerous POM statements in advertising and promotional materials
15   repeat this misleading claim that POM's "Wonderful" variety pomegranates have
16   been shown by research to be unique and nutritionally superior to all other
17   pomegranates.   The purpose and effect of these misrepresentations is to falsely
18   disparage all competing pomegranate products.   There is no competent and/or
19   reliable scientific evidence that the POM Wonderful variety of pomegranate used in
20   POM's products is nutritionally superior to, or confers greater health benefits than,
21   the pomegranates used by POM's competitors.

22       48.   By making such claims, it causes consumers, including Plaintiffs, to
23   believe that buying POM's products, even at higher price points, confers
24   significantly more health benefits on the purchaser than comparable products at
25   lower price points.

26

27

28

C.   **POM Falsely Describes Its Manufacturing Process To Imply Its Juice Is Fresh and Not From Concentrate**

49.   Plaintiff POM maintains a webpage entitled "From Tree to Bottle," available under the "POM Truth" tab of the POM website, http://www.pomegranatetruth.com. The page contains a video that purports to depict POM's juice manufacturing process. The video, however, omits the pasteurization and concentration-reconstitution process.

50.   The video is approximately one minute and five seconds. It begins with a farmer cutting a pomegranate from a tree and placing the fruit in a sack. The worker then boards the back of a truck and empties his sack of pomegranates into a container containing other pomegranates. Next, the video shows a conveyor belt filled with pomegranates being washed and sorted onto different conveyor belts and then several pomegranates are funneled into large pipes. From the pipes, juice appears and drains into a large vat of dark red liquid. The video depicts plastic tubes being compressed by a machine into the POM bottle shape. The bottles pass along the conveyor belt and are filled with red liquid, capped and date coded by laser. After coding, the caps of nine bottlers are shown with the camera zooming out to images of large cardboard boxes. The boxes are raised to where the bottles are suspended and then dropped back down onto the conveyor belt. Presumably, the boxes have been filled with the finished POM bottles.

51.   In its entirety, the voice over the video images states: "Welcome to POM Wonderful Orchards in sunny central California. Here we grow and hand-pick each wonderful variety pomegranate that goes into our juice. Once the pomegranates are harvested, they are transported to our nearby juicing facility where they are washed, sorted and conveyed to the juicing machines. Our state of the art equipment delivers just the right amount of pressure to release the naturally rich red juice. Much of the healthy antioxidant goodness comes from crushing the whole fruit, husk and all. We even make and decorate our own distinctive bottles, shaped

13
FIRST AMENDED COMPLAINT

1  like two pomegranates stacked on top of each other.  Then, we fill the iconic bottles
2  with 100% natural pomegranate juice.  We don't add sugar or coloring, like some
3  other pomegranate juice brands. In fact, every 16 ounce bottle contains the juice of
4  four whole pomegranates.  Once filled, the bottles are sealed and date coded to
5  maintain freshness.  They are sorted into cases, loaded into refrigerated trucks, and
6  shipped to a store near you.  We are dedicated to ensuring quality from start to
7  finish, to give you healthy, authentic pomegranate juice you can trust.  Enjoy!"

8      52.    In addition, POM misleads consumers in its representation of the fact
9  that its juice is from concentrate in its print and internet advertisements.  POM
10  packages its product in bottles that are shaped like two pomegranates on top of each
11  other. On the actual product, the top bulb contains the brand name, "POM
12  Wonderful" and the name of the juice, "100% Pomegranate Juice;" the bottom bulb
13  contains the words "from concentrate." In its advertisements, POM prominently
14  displays the entire front of its bottle, including its brand name and the name of the
15  juice, but POM conceals the language that otherwise appears on the bottom of the
16  bottle.  The concealed language includes the text that the product is "from
17  concentrate." POM conceals this language in its print and online advertisements,
18  and when the advertisements are viewed as a whole, they mislead consumers into
19  believing that POM's juice is not from concentrate.  For example, one of POM's
20  webpage greetings states, "Someone save me from fake pomegranate juices!" and is
21  followed by the text, "Have no health fear, POM is here!"  The greeting purports to
22  show the front of POM's bottle, including the label on the top of the bottle asserting
23  that the juice is 100% pomegranate juice, yet the bottom portion of the image
24  conceals the "from concentrate" language that otherwise appears on the bottle.

25      53.    POM's website further states under the "FAQ" tab, in the "Health &
26  Nutrition" section, "[s]ince POM Wonderful pomegranate juice is a refrigerated
27  product, treat it as you would fresh milk or fresh orange juice! POM Wonderful
28  pomegranate juice must refrigerated at all times."  Yet, POM's juice is not fresh - it

FIRST AMENDED COMPLAINT

1   is from concentrate.  POM's promotion of its product on its website, therefore,

2   misleads consumers into believing that its juice is freshly squeezed.

3      54.    As another example, in the January/February 2008 issue of Health

4   magazine, POM's advertisement exclaims "Pure science."  Next to this phrase, the

5   advertisement purports to show the front of the POM bottle, in its entirety, yet the

6   "from concentrate" language is concealed.  The depiction of POM's product in the

7   advertisement misleads the viewer into believing the product is not from

8   concentrate.

9      55.    In the November 2008 issue of Prevention magazine, POM's

10  advertisement explicitly states "Ingredients: Contains no trickery, deceit, excuses,

11  shams, duplicity, fabrication, white lies, exaggeration, overpromises, tall tales or

12  spin."  Yet the depiction of POM's product conceals that it is "from concentrate."

13  The advertisement purports to show the front of the POM bottle, in its entirety, yet

14  the "from concentrate" language is concealed.

15     56.    In addition, in the November 2008 issue of Health magazine, POM's

16  advertisement provides "Imitation may be sincere. But is it pure?"  Again, POM's

17  advertisement conceals the fact that it is "from concentrate."  The advertisement

18  leaves the viewer with the impression that they are seeing the entire front of POM's

19  bottle, yet the words "from concentrate" that would otherwise appear on the bottom

20  of POM's bottle are concealed.

21     57.    In the June 2009 issue of Health magazine, POM's advertisement states

22  "100% PURE pomegranate juice to the rescue!"  Again the depiction of POM's

23  product conceals that it is "from concentrate."  The advertisement purports to show

24  the front of the POM bottle, in its entirety, yet the "from concentrate" language is

25  concealed.

26     58.    POM's print and online advertisements mislead consumers into

27  believing POM's juice is not from concentrate.  POM continues to circulate these

28

15

**FIRST AMENDED COMPLAINT**

1    misleading advertisements in magazines and on the internet as it has done in prior

2    years.

3        59.    In sum, POM's marketing presents a false and misleading picture to

4    consumers that POM products confer significant, scientifically proven health

5    benefits, are substantially different from other juices, including other pomegranate

6    juices, in these health benefits, and are bottled directly from freshly squeezed

7    pomegranates, without any intermediate concentrate/reconstitution process.

8                          **Class Action Allegations**

9        65.    Plaintiffs will seek certification of a class or classes under Federal

10   Rules of Civil Procedure 23.

11       66.    This claim is brought on behalf of a class consisting of all persons in

12   the United States who purchased any POM Wonderful pomegranate products,

13   within the statutory limitations periods applicable to the herein-alleged causes of

14   action (including, without limitation, the period following the filing of this action).

15   Defendant's representations and omissions were material, were relied upon by

16   Plaintiffs and intended to be relied upon by the putative class, and resulted in

17   damage to each and every member of the class as alleged above.

18       67.    The exact number of members of the class as identified above is not

19   known, but given published reports as to POM Wonderful's sales, which are in the

20   tens of millions dollars, it is reasonable to presume that the class is so numerous that

21   joinder of individual members is impracticable.

22       68.    There are common questions of law and fact in the action that relate to

23   and affect the rights of each member of the class, namely whether the false,

24   misleading, unfair, and unlawful activities ascribed to Defendant's marketing

25   campaign, as alleged above, are actionable under applicable legal theories.

26       69.    The relief sought is common to the class.  For example, each affected

27   Plaintiff and class member will be entitled under the Unfair Competition Law to,

28

1  among other things, restitution of money that Defendant wrongfully acquired from
2  them through their practices, and to potential damages under other causes of action.

3       70.   The claims of Plaintiffs, who are representatives of the class identified
4  above, are typical of the claims of the class.  The claims of all members depend
5  upon a showing of the acts and omissions of Defendant described herein giving rise
6  to the right of Plaintiffs to the relief sought.

7       71.   There is no conflict as between the individually named Plaintiffs and
8  other members of the class with respect to this action, or with respect to the claims
9  for relief herein set forth.

10       72.   The named Plaintiffs are the representative parties for the class.  They
11  are able to and will fairly and adequately protect the interests of the class.

12       73.   Counsel for Plaintiffs are experienced and capable in the field of
13  consumer protection litigation.  They have successfully prosecuted claims in other,
14  similar litigation.

15       74.   Certification of the class is appropriate under applicable law.  The
16  questions of law and fact common to the members of the class predominate over any
17  questions affecting only individual members.  A class action is superior to other
18  available methods for the fair and efficient adjudication of the controversy, and will
19  create a substantial benefit to both the public and the courts in that:

20       • Costs of prosecuting the action individually will vastly exceed
21         the costs for prosecuting the case as a class action;
22       • Class certification will obviate the necessity of a multiplicity of
23         claims;
24       • It is desirable to concentrate the litigation of these claims in this
25         forum;
26       • Unification of common questions of fact and law into a single
27         proceeding before this Court will reduce the likelihood of
28         inconsistent rulings, opinions, and decisions.

17

FIRST AMENDED COMPLAINT

75.     A class action is a superior means of fairly and efficiently resolving this dispute.  Members of the class almost invariably lack the means to pay attorneys to prosecute their claims individually.  Given the complexity of the issues presented here, individual claims are not sufficiently sizeable to attract the interest of highly able and dedicated attorneys who will prosecute them on a contingency basis.  Only by aggregating claims can Plaintiffs gain the leverage necessary to pursue a just and global resolution of the issues raised in this complaint.  A class action is therefore essential to prevent a failure of justice.

76.     Notice to the putative class may be accomplished through publication, records maintained by grocery store rewards cards, records maintained by Defendant, signs or placards at points-of-sale, or other forms of distribution, if necessary.

### FIRST CAUSE OF ACTION

### Business and Professions Code§ 17500

### (Violation of the False Advertising Act)

### (By All Plaintiffs and the Class against All Defendants)

77.     Plaintiffs hereby incorporate, as if set forth in full, each and every preceding and subsequent allegation in this complaint.

78.     *Business and Professions Code* § 17500 provides that "[i]t is unlawful for any ... corporation ... with intent ... to dispose of ... personal property ... to induce the public to enter into any obligation relating thereto, to make or disseminate or cause to be made or disseminated ... from this state before the public in any state, in any newspaper or other publication, or any advertising device, or by public outcry or proclamation, or in any other manner or means whatever, including over the Internet, any statement ... which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading...."

79.  Defendant misleads consumers by making untrue statements and failing to disclose what is required as stated in the Code, as alleged above.

80.  As a direct and proximate result of Defendant's misleading and false advertising, Plaintiffs and the members of the Class have suffered injury in fact and have lost money or property.

81.  The misleading and false advertising described herein presents a continuing threat to Plaintiffs and the Class in that Defendant persists and continues to engage in these practices, and will not cease doing so unless and until forced to do so by this Court.  Defendant's conduct will continue to cause irreparable injury to Plaintiffs and the Class unless enjoined or restrained.

## SECOND CAUSE OF ACTION

### Business and Professions Code § 17200, *et seq.*

### (Violation of the Unfair Competition Law)

### (By All Plaintiffs and the Class against All Defendants)

82.  Plaintiffs hereby incorporate, as if set forth in full, each and every preceding and subsequent allegation in this complaint.

83.  California Business and Professions Code § 17200, *et seq.*, (the "Unfair Competition Law" or "UCL") authorizes private lawsuits to enjoin acts of "unfair competition" which includes any unlawful, unfair, or fraudulent business practice.

84.  The UCL imposes strict liability.  Plaintiffs need not prove defendant intentionally or negligently engaged in unlawful, unfair or fraudulent business practices—but only that such practices occurred.

85.  The material misrepresentations, concealments, and non-disclosures by Defendant POMWonderful LLC, and DOES 1-10, as part of their marketing of its pomegranate products, are unlawful, unfair, and fraudulent business practices prohibited by the UCL.

86.  In carrying out such marketing, Defendant has violated the Consumer Legal Remedies Act, the False Advertising Law, and various other laws,

19

FIRST AMENDED COMPLAINT

1    regulations, statutes, and/or common law duties.  Defendant's business practices

2    alleged herein, therefore, are unlawful within the meaning of the UCL.

3        87.    The harm to Plaintiffs and members of the public outweighs the utility

4    of Defendant's practices and, consequently, Defendant's practices, as set forth fully

5    above, constitute an unfair business act or practice within the meaning of the UCL.

6        88.    Defendant's practices are additionally unfair because they have caused

7    Plaintiffs and the class substantial injury, which is not outweighed by any

8    countervailing benefits to consumers, and is not an injury the consumers themselves

9    could have reasonably avoided.

10       89.    Defendant's practices, as set forth above, have misled the general

11   public in the past and will mislead the general public in the future.  Consequently,

12   Defendant's practices constitute an unfair business practice within the meaning of

13   the UCL.

14       90.    Pursuant to Cal. Bus. & Prof. Code § 17204, an action for unfair

15   competition may be brought by any "person . . . who has suffered injury in fact and

16   has lost money or property as a result of such unfair competition."  Defendant's

17   wrongful misrepresentations and omissions have directly and seriously injured

18   Plaintiffs and the putative class by causing them to purchase POM products based

19   upon false and misleading claims.

20       91.    The unlawful, unfair, and fraudulent business practices of Defendant

21   are ongoing and present a continuing threat that members of the public will be

22   misled into purchasing POM products.

23       92.    Pursuant to the UCL, Plaintiffs are entitled to preliminary and

24   permanent injunctive relief ordering Defendant to cease this unfair competition, as

25   well as disgorgement and restitution to Plaintiffs of all of Defendant's revenues

26   associated with their unfair competition, or such portion of those revenues as the

27   Court may find equitable.

28

# THIRD CAUSE OF ACTION
## Civil Code § 1770, *et seq.*
## (Violation of the Consumer Legal Remedies Act)
## (By All Plaintiffs and the Class against All Defendants)

93.   Plaintiffs hereby incorporate, as if set forth in full, each and every preceding and subsequent allegation in this complaint.

94.   The Consumer Legal Remedies Act ("CLRA") creates a non-exclusive statutory remedy for unfair methods of competition and unfair or deceptive acts or business practices. *See Rèveles v. Toyota by the Bay,* 57 Cal. App. 4th 1139, 1164 (1997). Its self-declared purpose is to protect consumers against these unfair and deceptive business practices, and to provide efficient and economical procedures to secure such protection. Cal. Civil Code §1760. The CLRA was designed to be liberally construed and applied in favor of consumers to promote its underlying purposes. *Id.*

95.   More specifically, Plaintiffs allege that Defendant has violated paragraphs 5, 7, 9 and 19 of Cal. Civ. Code § 1770(a) by engaging in the unfair and/or deceptive acts and practices set forth herein. Defendant's unfair and deceptive business practices in carrying out the marketing program described above were and are intended to and did and do result in the purchase of Defendant's products by consumers, including Plaintiffs, in violation of the CLRA. Cal. Civil Code § 1770, *et seq.*

96.   As a result of Defendant's unfair and/or deceptive business practices, Plaintiffs and all purchasers of Defendant's products have suffered damage and lost money in that they paid for products that did not have the benefits as represented. Plaintiffs seek and are entitled to an order enjoining Defendant from continuing to engage in the unfair and deceptive business practices alleged herein.

97.   Pursuant to California Civil Code § 1782, a certified letter, return receipt requested, addressed to each Defendant, was sent on October 7, 2009. In

1   such letter, Plaintiffs demanded that within 30 days of the receipt of such letter, each

2   Defendant correct or otherwise rectify the unfair and misleading practices

3   complained of herein for the entire Class pursuant to California Civil Code §1770 et

4   seq.  Because Defendant has failed to do so, Plaintiffs now seek damages for such

5   deceptive practices pursuant to California Civil Code §§1780 and 1782 for failure to

6   make such correction.

7                          **PRAYER FOR RELIEF**

8          **WHEREFORE**, Plaintiffs, individually and on behalf of the class, pray for

9   relief and judgment as follows:

10         1.      For preliminary and permanent injunctive relief enjoining Defendant,

11  its agents, servants and employees, and all persons acting in concert with them, from

12  engaging in, and continuing to engage in, the unfair, unlawful and/or fraudulent

13  business practices alleged above and that may yet be discovered in the prosecution

14  of this action;

15         2.      For certification of the putative class;

16         3.      For restitution and disgorgement of all money or property wrongfully

17  obtained by Defendant by means of its herein-alleged unlawful, unfair, and

18  fraudulent business practices;

19         4.      For damages;

20         5.      For exemplary damages;

21         6.      For attorneys' fees and expenses pursuant to all applicable laws

22  including, without limitation, Code of Civil Procedure §1021.5, the CLRA, and the

23  common law private attorney general doctrine;

24         7.      For costs of suit; and

25         8.      For such other and further relief as the Court deems just and proper.

26  //

27  //

28  //

1

Date: January 14, 2010

Respectfully submitted,

2

3

Michael Louis Kelly
Behram V. Parekh
Heather M. Peterson

4

5

By: _Heather Peterson_____

6

Heather M. Peterson
**KIRTLAND & PACKARD LLP**
2361 Rosecrans Avenue, Fourth Floor
El Segundo, California 90245
Phone: 310.536.1000
Facsimile: 310.536.1001

7

8

9

*Counsel for Plaintiffs and all others
similarly situated*

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

23
**FIRST AMENDED COMPLAINT**

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a jury trial on all causes of action so triable.

Date: January 14, 2010

Respectfully submitted,

Michael Louis Kelly
Behram V. Parekh
Heather M Peterson

By: _____

Heather M. Peterson
**KIRTLAND & PACKARD LLP**
2361 Rosecrans Avenue, Fourth Floor
El Segundo, California 90245
Phone: 310.536.1000
Facsimile: 310.536.1001

*Counsel for Plaintiffs and all others
similarly situated*

24

FIRST AMENDED COMPLAINT

I, John Alexander, declare as follows:

1.      I am a Plaintiff in this action, and am a citizen of the State of California.  I have personal knowledge of the facts herein and, if called as a witness, I could and would testify competently thereto.

2.      The Complaint in this action, filed concurrently with this Declaration, is filed in the proper place for trial under Civil Code Section 1780(d) in that Los Angeles County is a county in which Defendants are doing business.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct, and that this Declaration was executed on September 30, 2009, at Riverside, California.

John Alexander

562356_1.DOC:9-30-09

- 1 -

DECLARATION OF JOHN ALEXANDER RE PROPER VENUE

1    I, Melissa Espinoza, declare as follows:

2        1.    I am a Plaintiff in this action, and am a citizen of the State of California.  I have

3    personal knowledge of the facts herein and, if called as a witness, I could and would testify

4    competently thereto.

5

6        2.    The Complaint in this action, filed concurrently with this Declaration, is filed in the

7    proper place for trial under Civil Code Section 1780(d) in that Los Angeles County is a county in

8    which Defendants are doing business.

9

10       I declare under penalty of perjury under the laws of the State of California that the foregoing is

11   true and correct, and that this Declaration was executed on September 30 2009, at 8:10 A.M.

12   California.

13

14                                                        Melissa Espinoza

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**DECLARATION OF MELISSA ESPINOZA RE PROPER VENUE**

**PROOF OF SERVICE**
STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

I, the undersigned, am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action. My business address is 2361 Rosecrans Avenue, Fourth Floor, El Segundo, California 90245. I am "readily familiar" with my employer's practice of collection and processing of correspondence and documents for mailing with the United States Postal Service, mailing via overnight delivery, transmission by facsimile machine, and delivery by hand.

On January 14, 2010, I served a copy of each of the documents listed below by placing said copies for processing as indicated herein:

**FIRST AMENDED COMPLAINT**

(✓)   OVERNIGHT DELIVERY:  The correspondence or documents were placed in sealed, labeled packaging for overnight delivery with all charges to be paid by my employer on the above date for collection and mailing at my place of business to be deposited in a facility regularly maintained by the overnight delivery carrier, or delivered to a courier or driver authorized by the overnight delivery carrier to receive such packages, on this date in the ordinary course of business.

PERSONS OR PARTIES SERVED:

** See attached service list **

(  )   (State)  I certify (or declare) under penalty of perjury that the foregoing is true and correct and that this declaration was executed on January 14, 2010.

(✓)   (Federal)  I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

KATHERINE STUCZYNSKI

02201-00001 0137294.01

## SERVICE LIST

1

2
Kristina Diaz, Esq.
3   Christopher Van Gundy, Esq.
Roll International-Legal Department
4   11444 W. Olympic Boulevard
10th Floor
5   Los Angeles, CA 90064
p: (310) 966-8775
6   f: (310) 966-8810
*Attorneys for POMWonderful*

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

KIRTLAND & PACKARD LLP
LAW OFFICES

02201-00001  0137294.01

KIRTLAND & PACKARD LLP
LAW OFFICES

PROOF OF SERVICE
[CCP §§1010.6, 1011, 1013, 1013a, 2015.3; CRC 2.260, 2.306]
STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

I, the undersigned, am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action. My business address is 2361 Rosecrans Avenue, Fourth Floor, El Segundo, California 90245. I am "readily familiar" with my employer's practice of collection and processing of correspondence and documents for mailing with the United States Postal Service, mailing via overnight delivery, transmission by facsimile machine, and delivery by hand.

On August 26, 2011, I served a copy of each of the documents listed below by placing said copies for processing as indicated herein:

**MASTER CONSOLIDATED COMPLAINT**

(✓)   U.S. MAIL:  The correspondence or documents were placed in sealed, labeled envelopes with postage thereon fully prepaid on the above date and placed for collection and mailing at my place of business to be deposited with the U.S. Postal Service at El Segundo, California on this same date in the ordinary course of business.

(✓)   E-MAIL TRANSMISSION:  The correspondence or documents were e-mailed from my place of business on this same date in the ordinary course of business prior to 7:00 p.m. Pacific Time.

PERSONS OR PARTIES SERVED:

*Counsel for Defendants*

| | |
|---|---|
| Sean Commons<br>SIDLEY AUSTIN LLP<br>555 West Fifth Street,<br>Los Angeles, CA 90013<br>213-896-6000 tel.<br>213-896-6600 fax<br>scommons@sidley.com | T. Robert Scarborough<br>SIDLEY AUSTIN LLP<br>One South Dearborn<br>Chicago, IL 60603<br>312-853-2236 tel.<br>312-853-7036<br>tscarborough@sidley.com |
| Kristina M. Diaz<br>Daniel Beck<br>Matthew D. Moran<br>ROLL LAW GROUP<br>11444 West Olympic Boulevard<br>Tenth Floor<br>Los Angeles, California 90064<br>(310) 966-8400<br>dbeck@roll.com<br>kdiaz@roll.com<br>mmoran@roll.com | |

( ✓ )   (Federal)  I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

KATHERINE MAGUIRE

02201-00001  147988.01

PROOF OF SERVICE

1   <u>COURTESY COPY TO PLAINTIFFS' COUNSEL VIA:</u>

2

3   (✓)   E-MAIL TRANSMISSION:  The correspondence or documents were e-mailed from my place of business on this same date in the ordinary course of business prior to 7:00 p.m. Pacific Time.

4

5   PERSONS OR PARTIES SERVED:

6       ***PLEASE SEE ATTACHED POM MDL SERVICE LIST***

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

02201-00001  147988.01

KIRTLAND & PACKARD LLP
LAW OFFICES

**POM MDL Service List**

| Plaintiff's Counsel | Plaintiffs' Counsel's emails |
|---|---|
| Frank E. Piscitelli , Jr.<br>Piscitelli Law Firm<br>55 Public Square<br>Suite 1950<br>Cleveland, OH 44113<br>(216) 931-7000<br>Fax: (216) 931-9925 | frank@feplaw.com |
| Sean T. Keith<br>Keith, Miller, Butler & Webb, PLLC<br>224 South 2nd St.<br>Rogers, AR 72756<br>(479) 621-0006<br>Fax: (479) 631-6890 | skeith@arkattorneys.com |
| Stephen A Lisle<br>Lisle Law Firm, P.C.<br>1458 Plaza Place<br>Suite 101<br>Springdale, AR 72764-5273<br>(479) 750-4444<br>Fax: (479) 751-6792 | slisle@lislelawfirm.com |
| Andrei V. Rado<br>Anne Marie Vu<br>MILBERG LLP<br>One Pennsylvania Plaza, 48th Floor<br>New York, NY 10119<br>212-594-5300<br>Fax: 212-868-1229<br><br>Jeff S. Westerman<br>Michelle Furukawa<br>MILBERG LLP<br>One California Plaza<br>300 South Grand Avenue<br>Suite 3900<br>Los Angeles, CA 90071-3149<br>213-617-1200<br>Fax: 213-617-1975 | arado@milberg.com<br>avu@milberg.com<br><br><br>jwesterman@milberg.com<br>mfurukawa@milberg.com |

02201-00001 149284.01

| | |
|---|---|
| Kim E. Richman<br>Michael R. Reese<br>REESE RICHMAN LLLP<br>875 Ave of the Americas, 18th Fl<br>New York, NY 10001<br>(212) 579-4625<br>Fax: (212) 253-4272 | krichman@reeserichman.com<br>michael@reeserichman.com |
| Sara Avila<br>Gillian L. Wade<br>MILSTEIN ADELMAN<br>2800 Donald Douglas Loop North<br>Santa Monica, CA 90405<br>310-396-9600<br><br>Howard L Rubinstein<br>Law Offices of Howard W Rubinstein<br>P O Box 4839<br>Aspen, CO 81612<br>832-715-2788<br>Fax: 561-688-0630<br><br>Joe R Whatley , Jr<br>Patrick J. Sheehan<br>Whatley Drake and Kallas LLC<br>1540 Broadway 37th Floor<br>New York, NY 10036<br>212-447-7070<br>Fax: 212-447-7077<br><br>John Randall Whaley<br>Neblett Beard and Arsenault<br>2220 Bonaventure Court<br>PO Box 1190<br>Alexandria, LA 71309-1190<br>800-256-1050 Fax: 318-561-2592 | gwade@milsteinadelman.com<br>savila@milsteinadelman.com<br><br><br>howardr@pdq.net<br><br><br>jwhatley@wdklaw.com<br>psheehan@wdklaw.com<br><br><br>jwhaley@nbalawfirm.com |
| Matthew B Butler<br>Nicholas and Butler LLP<br>225 Broadway 19th Floor<br>San Diego, CA 92101<br>619-325-0492<br>Fax: 619-325-0496 | mbutler@nblaw.org |

02201-00001  149284.01

| | |
|---|---|
| Mark John Geragos<br>Shelley Kaufman<br>Tamar G Arminak<br>Geragos & Geragos APC<br>644 South Figeuroa Street<br>Los Angeles, CA 90017<br>213-625-3900<br>Fax: 213-625-1600 | mark@geragos.com<br>kaufman@geragos.com<br>arminak@geragos.com |
| Gregory B Scarlett<br>Jordan S Esensten<br>Melissa M Harnett<br>Wasserman Comden Casselman and<br>Esensten LLP<br>5567 Reseda Boulevard Suite 330<br>PO Box 7033<br>Tarzana, CA 91357-7033<br>818-705-6800<br>Fax: 818-345-0162 | gscarlett@wccelaw.com<br>mharnett@wccelaw.com<br>jesensten@wccelaw.com |
| Michael D Braun<br>Braun Law Group PC<br>10680 West Pico Boulevard Suite 280<br>Los Angeles, CA 90064<br>310-836-6000<br>Fax: 310-836-6010<br><br>Gregory B Linkh<br>Jacqueline Sailer<br>Murray Frank and Sailer LLP<br>275 Madison Avenue Suite 801<br>New York, NY 10016<br>212-682-1818<br>Fax: 212-682-1892 | service@braunlawgroup.com<br><br><br><br><br>glinkh@murrayfrank.com<br>jsailer@murrayfrank.com |
| Donald Amamgbo<br>AMAMGBO & ASSOCIATES<br>WinmatsConversion6<br>7901 Oakport Street<br>Suite 4900<br>Oakland, CA 94621<br>(510) 615-6000<br>Fax: (510) 615-6025 | donald@amamgbolaw.com |

02201-00001 149284.01

| | |
|---|---|
| Reginald Von Terrell<br>The Terrell Law Group<br>Post Office Box 13315, PMB #148<br>Oakland, CA 94661<br>510-237-9700<br>Fax: 510-237-4616 | reggiet2@aol.com |
| Stuart A Davidson<br>Cullin Avram O'Brien<br>Mark Jeffrey Dearman<br>Robbins Geller Rudman & Dowd LLP<br>120 E. Palmetto Park Road<br>Suite 500<br>Boca Raton, FL 33432<br>561-750-3000<br>Fax: 561-750-3364 | sdavidson@rgrdlaw.com<br>cobrien@rgrdlaw.com<br>mdearman@rgrdlaw.com |
| Lance August Harke<br>Harke Clasby & Bushman LLP<br>9699 NE Second Avenue<br>Miami Shores, FL 33138<br>305-536-8222<br>Fax: 305-536-8229 | lharke@harkeclasby.com |
| John Rocco Climaco<br>Climaco, Wilcox, Peca, Tarantino &<br>Garofoil, Co., LPA<br>55 Public Square<br>Suite 1950<br>Cleveland, OH 44113<br>216-621-8484<br>Fax: 216-771-1632<br><br>Mark A. Tate<br>Tate Law Group, LLC<br>P.O. Box 9060<br>Savannah, GA 31412<br>912-234-3030 Fax: 912-234-9700 | jrclim@climacolaw.com<br><br><br><br><br><br><br>marktate@tatelawgroup.com |
| Daniel M. Kotin<br>Rene A. Torrado , Jr.<br>Corboy & Demetrio<br>33 North Dearborn Street<br>Suite 2100<br>Chicago, IL 60602  (312) 346-3191 | dmk@corboydemetrio.com<br>rtorrado@corboydemetrio.com |

02201-00001  149284.01

| | |
|---|---|
| Shawn G. Foster<br>Valley A. Renshaw<br>Davis, Bethune & Jones, L.L.C.<br>1100 Main St.-Ste. 2930<br>Kansas City, MO 64105<br>816-421-1600<br>Fax: 816-472-5972 | sfoster@dbjlaw.net<br>vrenshaw@dbjlaw.net |
| Shawn Gayland Foster<br>Davis, Bethune & Jones, LLC<br>1100 Main<br>2930 City Center Square<br>Kansas City, MO 64105<br>(816)421-1600<br>Fax: (816)472-5972 | sfoster@dbjlaw.net |
| Andrea B. Bierstein<br>Hanly Conroy Bierstein Sheridan Fisher<br>& Hayes, LLP<br>112 Madison Avenue<br>New York, NY 10016<br>(212) 784-6403<br>Fax: (212) 784-6400<br><br>Mitchell Mark Breit<br>Hanly Conroy Bierstein Sheridan Fisher<br>& Hayes LLP<br>Direct (212) 784-6422<br>Fax (212) 213-5949<br><br>Hunter J Shkolnik<br>Napoli, Bern, Ripka & Shkolnik, LLP<br>Testimonials<br>350 5th Avenue,<br>Suite 7413<br>New York, NY 10118<br>(212) 267-3700 | abierstein@hanlyconroy.com<br><br><br><br><br><br>mbreit@hanlyconroy.com<br><br><br><br><br>Hunter@NapoliBern.com |
| Robert Michael Brill<br>Law Offices of Robert M. Brill, LLC<br>880 Third Avenue<br>13th Floor<br>New York, NY 10022<br>(212) 935-7900 Fax: (212) 935-6524 | brillesq@aol.com |

| | |
|---|---|
| John R Climaco<br>John A. Peca, Jr.<br>CLIMACO LEFKOWITZ PECA<br>WILCOX & GARFOLI CO LPA<br>55 Public Square<br>Suite 1950<br>Cleveland, OH 44113<br>(216) 621-8484 Fax: (216) 771-1632 | japeca@climacolaw.com<br>jrclim@climacolaw.com |
| D. Scott Kalish<br>405 Western Reserve Bldg.<br>1468 West Ninth Street<br>Cleveland, OH 44113<br>216-502-0570<br>Fax: 216-502-0569 | scottkalishcollc@cs.com |
| Frank E. Piscitelli, Jr.<br>Ste. 1950<br>55 Public Square<br>Cleveland, OH 44113<br>216-931-7000<br>Fax: 216-931-9925 | frank@feplaw.com |
| James L. Deese<br>JAMES DEESE ATTORNEY at LAW<br>James L. Deese, Attorney at Law<br>1468 West 9th Street<br>Cleveland, OH 44113-1220<br>216-357-4000 | jasdeese@sbcglobal.net |
| Daniel R. Karon<br>Goldman, Scarlato & Karon<br>700 W. St. Clair Avenue, Suite 204<br>Cleveland, OH 44113<br>Direct Dial: (216) 622-1851<br>Facsimile: (216) 241-8175<br>Cell: (216) 390-2594 | karon@gsk-law.com |

02201-00001  149284.01