O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| IN RE: POM WONDERFUL LLC MARKETING AND SALES PRACTICES LITIGATION | ) ) ) ) ) ) ) ) ) ) ) ) | Case No. ML 10-02199 DDP (RZx) MDL Number 2199<br><br>**ORDER CERTIFYING CLASS**<br><br>[Dkt. No. 75] |

Presently before the court is Plaintiffs' Motion for Class Certification. Having considered the submissions of the parties and heard oral argument, the court grants the motion and adopts the following order.

**I.  Background**

Defendant POM Wonderful LLC ("Pom") produces pomegranate juice products. (Master Consolidated Complaint ("MCC") at 4 ¶ 4.)  Pom's advertisements claim that Pom juice products have a variety of health-related benefits, and that these health claims are supported by tens of millions of dollars in medical research.  (MCC at 4 ¶¶ 5-10.)  Plaintiffs allege that Pom's claims are false and/or

misleading. (See, e.g. MCC ¶ 11.) Plaintiffs therefore brought this purported class action, alleging violations of 1) California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code § 17200, et seq., 2) California's Unfair Competition Law ("UCL"), Cal. Civ. Code § 17200, et seq., and 3) California's Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750, et seq.. Plaintiffs now move to certify a nationwide class comprised of all persons who, between October 2005 and September 2010, purchased one or more Pom Wonderful 100% juice products, excluding Pom, its subsidiaries, parents, divisions, affiliates, officers, and directors.

**II. Legal Standard**

The party seeking class certification bears the burden of showing that each of the four requirements of Rule 23(a) and at least one of the requirements of Rule 23(b) are met. See Hanon v. Dataprods. Corp., 976 F.2d 497, 508-09 (9th Cir. 1992). Rule 23(a) sets forth four prerequisites for class certification:

> (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a); Hanon, 976 F.2d at 508. These four requirements are often referred to as numerosity, commonality, typicality, and adequacy. See Gen. Tel. Co. v. Falcon, 457 U.S. 147, 156 (1982). "In determining the propriety of a class action, the question is not whether the plaintiff has stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met." Eisen v. Carlisle & Jacquelin, 417 U.S. 156, 178 (1974) (internal quotation and citations

2

omitted). This court, therefore, considers the merits of the underlying claim to the extent that the merits overlap with the Rule 23(a) requirements, but will not conduct a "mini-trial" or determine at this stage whether Plaintiffs could actually prevail. Ellis v. Costco Wholesale Corp., 657 F.3d 970, 981, 983 n.8 (9th Cir. 2011).

**III. Discussion**

    A.   FRCP 23(b)(3)

Under Rule 23(b)(3), a plaintiff seeking to certify a class must show that questions of law or fact common to the members of the class "predominate over any questions affecting only individual members and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3).

        1.   Predominance of Law

Pom asserts that the proposed class cannot be certified because California law cannot be applied to consumers nationwide. (Opp. at 12.) Although Pom does not frame it as such, this argument poses a challenge to Plaintiffs' showing under Rule 23(b)(3) that a common issue of law predominates. See Mazza v. American Honda Motor Co., Inc., 666 F.3d 581, 589 (9th Cir. 2012).

Pom's contention that California's FAL, CLRA, and UCL can never be applied to a nationwide class is based on the Ninth Circuit's recent decision in Mazza. There, plaintiffs sought to certify a nationwide class of consumers who purchased or leased certain vehicles equipped with a particular type of braking system. Mazza, 666 F.3d at 587. The Mazza proposed class members

were spread throughout forty-four different states. <u>Id.</u> at 587 n.1.

In analyzing whether questions of law common to the class predominated, the Ninth Circuit in <u>Mazza</u> applied California's traditional choice of law analysis. <u>Id.</u> at 589-594. Under that framework, once a plaintiff shows that California has significant contact with each class member's claim, and that application of California would therefore be constitutional, the burden shifts to the defendant to show that some foreign law, rather than California law, should apply. <u>Id.</u> At 589-90 (citing <u>Wash. Mut. Bank v. Superior Court</u>, 24 Cal.4th 906, 921 (2001).

California employs a three-step "governmental interest analysis" to determine which state's (or states') law should apply. <u>Wash. Mut. Bank</u>, 24 Cal.4th at 919. First, the court must determine whether the relevant law of each of the jurisdictions is different. <u>Id.</u> If the laws are identical, there is no conflict of laws issue, and California law may be applied to nationwide or multi-state class claims.

Where states' laws do differ, the court proceeds to the second step of the analysis, and "examines each jurisdiction's interest in the application of its own law under the circumstances of the particular case to determine whether a true conflict exists." <u>Mazza</u>, 666 F.3d at 590 (citing <u>McCann v. Foster Wheeler LLC</u>, 48 Cal.4th 68, 81-82 (2010). In <u>Hurtado v. Superior Court</u>, 11 Cal.3d 574 (1974), for example, a Mexican plaintiff sought wrongful death damages from California defendants after the death of a Mexican decedent in California. Mexican law capped the recoverable damages at a fixed amount, while California law did

not. Id. at 579. In determining which law to apply, the California Supreme Court conducted a thorough analysis of the motivating concerns behind each respective law, concluding that the Mexican law was intended to influence Mexican defendants' conduct within Mexico. Id. at 583-84. The court then looked to the facts of the case at bar and determined that, under the particular circumstances of that case, application of Mexican law to a California plaintiff in California would have no bearing whatsoever on Mexico's goals, and that California law should apply. Id. at 584, 586-87.

In some instances, of course, the particular facts of a case will demonstrate that a true conflict of laws does exist. In such circumstances, the court must proceed to the third step of the governmental interests analysis and compare the strengths of the relative interests at stake. Wash. Mut. Bank, 24 Cal.4th at 920. The question is not which law is "better," but rather which state's interests would be most impaired by application of another state's law. Mazza, 666 F.3d at 593 (internal citation and quotation omitted); Wash. Mut. Bank, 24 Cal.4th at 920. This "comparative impairment" inquiry requires a detailed examination of the states' relative commitment to their respective laws, as well as the history and purpose of those laws. Wash. Mut. Bank, 24 Cal.4th at 920.

Mazza, upon which Pom so heavily relies, conducted a governmental interests analysis, as required under California law. The Mazza majority, relying upon defendant Honda's "exhaustively detailed" briefing regarding material differences between California's law and that of other jurisdictions, ultimately held

that, under the particular facts and circumstances of the case before it, foreign jurisdictions' interests in applying their own consumer protection laws outweighed California's interests. Mazza, 666 F.3d at 594.

Citing Mazza, Pom here asserts that "California's choice-of-law rules prohibit Plaintiffs from supplanting the laws of 49 other states with those of California," and that "California [l]aw [c]annot [s]upply the [r]ule of [d]ecision." (Opp. at 12.) To the extent that Pom argues that California law cannot be applied to consumers nationwide as a matter of law, Pom is incorrect. See Bruno v. Eckart Corp., 280 F.R.D. 540, 546-547 (C.D. Cal. 2012); see also Allen v. Hylands, Inc., No. CV 12-1150 DMG, 2012 WL 1656750 at *2; Forcellati v. Hyland's, Inc., __ F. Supp. 2d __, 2012 WL 2513481 at *2 (C.D. Cal. 2012). But see In re High-Tech Employee Antitrust Litigation, 876 F. Supp. 2d 1103, 1125 n.13 (N.D. Cal. 2012) ("[T]he Ninth Circuit has foreclosed the certification of nationwide classes under the UCL."). Mazza did not vacate the district court's class certification as a matter of law, but rather because defendant Honda met its burden to demonstrate material differences in state law and show that other states' interests outweighed California's.

Here, Plaintiffs have demonstrated that Pom is headquartered and located solely in California, developed its marketing strategies in California, and produced all of its pomegranate juice products in California. (Mot. at 19-20.) Pom does not dispute that Plaintiffs have met their burden to show that California has sufficient contacts to the claims at issue to

6

ensure that application of California law is constitutional. See Mazza, 666 F.3d at 589-90.

The burden thus shifts to Pom to show that foreign law, rather than California law, should apply. Wash. Mut. Bank, 24 Cal.4th at 921; Bruno, 280 F.R.D. at 546. Pom has not met its burden. Perhaps relying upon the mistaken assumption that California law cannot be applied to a nationwide class as a matter of law, discussed above, Pom cites, in a footnote, to Exhibit 21 to the Declaration of Alicia D. Mew in Support of Pom's Opposition. (Opp. at 13) Exhibit 21 consists of a chart of each state's consumer protection laws. The chart summarizes each law's provisions regarding such elements as scienter, reliance, and timeliness, as well as remedies and defenses. Nowhere, however, does Pom indicate which of these foreign laws differ from California's laws.

Whether or not Pom's footnoted exhibit is sufficient to satisfy Pom's burden with respect to the first step of California's three-part governmental interest analysis, Pom makes no attempt whatsoever to complete the remaining two steps. Even assuming, for the sake of argument, that Pom has identified specific differences between California and foreign law, nowhere does Pom apply the facts of this case to those laws or attempt to demonstrate, beyond citation to Mazza, that a true conflict exists. Having failed to identify any true conflict, Pom necessarily fails to carry its burden to demonstrate that the interests of any foreign jurisdiction outweigh California's interest in applying its own consumer protection laws to the facts of this case. Absent such a showing, the court is satisfied that

California law applies here to a nationwide class, and that common questions of law predominate.

### 2. Predominance of Fact

Pom argues that common questions of fact do not predominate because 1) Pom disseminated several different advertisements, 2) class members may or may not have relied on the various advertisements, 3) class members bought Pom products for different reasons, and 4) class members' claims require individualized damages inquiries. (Opp. at 16-17, 19, 21.) The court disagrees.

The MCC alleges that Pom promoted its products as having "special benefits relating to diseases and health-related conditions," and that these claims were backed up by tens of millions of dollars of medical research. (MCC at 4 ¶¶ 5, 9.) The MCC further alleges that these claims are false and/or misleading. (MCC ¶ 11.) As in other consumer fraud cases, the mere fact that Pom used several different advertisements to convey its health message is not dispositive. See, e.g., Johnson v. Gen. Mills, Inc., 275 F.R.D. 282, 288-89 (C.D. Cal. 2011); Guido v. L'Oreal, USA, Inc., __ F.R.D.__ , 2012 WL 1616912 at *8-9 (C.D. Cal. 2012); cf. Mazza, 666 F.3d at 596 (explaining that consumers who were "never exposed to an alleged false or misleading advertising . . . campaign" cannot recover damages under California's UCL) (emphasis addded)(quotation and citation omitted). Plaintiffs here have presented evidence that Pom marketed pomegranate juice as "the magic elixir of our age," that "helps all sorts of things in the body." Pom directed its marketing staff that Pom's "[m]ain messaging should be about heart health or longevity," and that "pomegranate juice[] promotes health and prolongs life." (Mot. at

8

4.) A false or misleading advertising campaign need not "consist of a specifically-worded false statement repeated to each and every [member] of the plaintiff class." <u>In re First Alliance Mortg. Co.</u>, 471 F.3d 977, 992. Indeed, "the class action mechanism would be impotent if a defendant could escape much of his potential liability for fraud by simply altering the wording or format of his misrepresentations across the class of victims." <u>Id.</u>

Pom disseminated its message via radio, billboards, and national print media over a period of several years. (Mot. at 5.) Plaintiff has provided evidence that Pom succeeded in getting its message out, including Pom's co-owner's statement that "72% of people who buy pomegranate juice buy it <u>for the health reason</u> . . . ." (Mot. at 7 (emphasis added).) Even Defendant's survey expert, Ravi Dhar, determined that a significant majority of respondents, in excess of 90%, cited health reasons as a motivating factor behind their purchase of Pom juice. (Dhar. Decl., Ex.2 ¶ 49.) The questions whether Pom's representations regarding the health benefits were material and deceived consumers predominate over individual questions regarding specific advertisements.

California's CLRA requires that each class member suffer an actual injury. <u>Stearns v. Ticketmaster Corp.</u>, 655 F.3d 1013, 1022 (9th Cir. 2011). Though Pom argues that this reliance inquiry would necessarily present predominantly individualized issues, an inference of reliance arises as to the entire class where, as here, material misrepresentations have been made to the entire class. <u>Id.</u>; <u>In re Tobacco II Cases</u>, 46 Cal. 4th 298, 328 (2009)

9

("[A] plaintiff . . . is not required to necessarily plead and prove individualized reliance on specific misrepresentations or false statements where . . . those misrepresentations and false statements were part of an extensive and long-term advertising campaign.") Materiality, judged by an objective, "reasonable man" standard, is subject to common proof. In re Apple, AT&T iPad Unlimited Data Plan Litig., No. C-10-2553 RMW, 2012 WL 248248 *5 (N.D. Cal. June 26, 2012) (citing In re Steroid Hormone Prod. Cases, 181 Cal. App. 4th 145, 157 (2010), United States v. Watkins, 278 F.3d 961, 967-68 (9th Cir. 2002).).

    Given the wide geographical and temporal scope over which Pom disseminated its health claims and the apparent success of Pom's marketing efforts, Plaintiffs need not present individualized evidence of reliance at this stage, as reliance can be inferred. See Johnson, 275 F.R.D. at 289; Chavez v. Blue Sky Natural Beverage Co., 268 F.R.D. 365, 376 (N.D. Cal. 2010); c.f. Yamada v. Nobel Biocare Holding AG, 275 F.R.D. 573, 578 (C.D. Cal. 2011) ("[A]ssuming arguendo that a presumption of reliance is not warranted and individualized questions do exist - common issues predominate over any individualized reliance issues.") The fact that individualized damage calculations may be necessary cannot alone defeat class certification. Yokoyama v. Midland Nat. Life Ins. Co., 594 F.3d 1087, 1089 (9th Cir. 2010) (citing Blackie v. Barrack, 524 F.2d 891, 905 (9th Cir. 1975); Schulz v. QualxServ, LLC, No. 09-CV-17-AJB, 2012 WL 1439066 at *3, 6-8 (S.D. Cal. Apr. 26, 2012). The court is therefore satisfied that common issues of fact predominate for purposes of Rule 23(b)(3).

        2.   Superiority

10

1    Concerns for the efficient resolution of controversies and
2 conservation of judicial resources underlie Rule 23(b)(3)'s
3 superiority requirement, which is related to Rule 23(a)'s
4 commonality test. Wolin v. Jaguar Land Rover N. Am., LLC, 617
5 F.3d 1168, 1175-76 (9th Cir. 2010). Among the relevant factors
6 are the degree of desirability of concentrating litigation in a
7 "particular forum and the likely difficulties in managing a class
8 action." Fed. R. Civ. P. 23(b)(3). Here, as described above, the
9 extent of Pom's contacts with California and the lack of any
10 demonstrated material conflict with the law of other states weigh
11 in favor of concentrating litigation of class members' claims in
12 this forum. Any potential management difficulties are outweighed
13 by the efficiencies to be gained by litigating class claims, which
14 will almost certainly require detailed scientific and expert
15 evidence, all at once. See, e.g., Spears v. First Am.
16 eAppraiseIT, No. C-08-00868 RMW, 2012 WL 1438709 at *8 (N.D. Cal.
17 April 25, 2012) ("[T[he benefits of a class action seem greater
18 where the common issues are complex and require extensive
19 evidence.").

20    Class actions are also superior where no realistic
21 alternative exists. Gonzalez v. Millard Mall Servs., Inc., 281
22 F.R.D. 455, 468 (S.D. Cal. 2012) (citing Valentino v. Carter-
23 Wallace, Inc., 97 F.3d 1227. 1234 (9th Cir. 1996). Though Pom
24 points out that the veracity of its medical claims are currently
25 at issue in a matter before the Federal Trade Commission, Pom
26 provides no explanation how resolution of that proceeding will
27 provide class members here with any remedy. (Opp. at 24). Nor
28 does the possibility of (at least) dozens of individual actions

provide any realistic alternative.  As often is the case in consumer actions, injured consumers who purchased a relatively inexpensive product are unlikely to pursue individual claims. See, e.g. Johnson, 275 F.R.D. at 289.  Therefore, "[w]here recovery on an individual basis would be dwarfed by the cost of litigating on an individual basis, this factor weighs in favor of class certification." Wolin, 617 F.3d at 1175.  Such is the case here.  A class action is the superior method for adjudicating class members' claims against Pom.

B. F.R.C.P. 23(a)

The court is satisfied that the numerosity, commonality, typicality, and adequacy requirements of Rule 23(a) are met here. Pom does not dispute that the proposed class is sufficiently numerous.  Pom does, however, contest Plaintiffs' showing with respect to commonality and typicality, for the same reasons underlying Pom's position with respect to predominance, discussed above.  (Opp. at 24.)

The Ninth Circuit construes Rule 23(a)(2)'s commonality requirement permissively. Hanlon v. Chrysler Corp., 150 F.3d 1011, 1019 (9th Cir. 1998).  The commonality requirement is less rigorous than the "companion requirements" of Rule 23(b)(3). Id. "All questions of fact and law need not be common to satisfy the [commonality] rule.  The existence of shared legal issues with divergent factual predicates is sufficient . . . ." Id.  Indeed, "even a single common question will do," so long as that question has the capacity to generate a common answer "apt to drive the resolution of the litigation." Wal-Mart Stores, Inc. v. Dukes, 131 S.Ct. 2541, 2551, 2556 (2011) (citations, internal quotations,

and alterations omitted).  As discussed above, questions regarding the truthfulness and materiality of Pom's health claims are shared by all members of the class.

The typicality requirement is also a permissive standard. Hanlon, 150 F.3d at 1019. "[R]epresentative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical." Id. at 1020. Here, the named Plaintiffs, like the absent members of the class, relied upon Pom's representations and made a purchase they otherwise would not have made.  Their claims are at least "reasonably co-extensive" with those of absent class members.

Lastly, Pom argues that five Class Representatives are inadequate because they have personal or professional relationships with certain class counsel.  (Opp. at 25.)  Pom does not appear to contest adequacy with the respect to the remainder of the named Plaintiffs and counsel.  To determine whether named plaintiffs or their counsel will adequately represent the class, the court must determine whether the named plaintiffs and counsel 1) have any conflicts of interest with other class members and 2) will vigorously prosecute the action on behalf of the class.  Id. The court sees no reason why the alleged relationships between certain named plaintiffs and certain counsel would have any bearing on these questions.

**IV. Conclusion**

For the reasons stated above, Plaintiffs' Motion for Class Certification of a class comprised of all persons who purchased a Pom Wonderful 100% juice product between October 2005 and September 2010 is GRANTED.  Plaintiffs Alexander, Brayall,

Chapman, Cosmas, Flaherty, Friedman, Giles, Henn, Holter, F. Pirolozzi, and Wilkinson are appointed as class representatives. Kirtland & Packard, LLP is appointed as class counsel.

IT IS SO ORDERED.

Dated: September 28, 2012

DEAN D. PREGERSON
United States District Judge

14