KRISTINA M. DIAZ (SBN 151566)
kdiaz@roll.com
MATTHEW D. MORAN (SBN 197079)
mmoran@roll.com
JOHNNY TRABOULSI (SBN 211384)
jtraboulsi@roll.com
ROLL LAW GROUP P.C.
11444 West Olympic Boulevard, 10th Floor
Los Angeles, CA  90064-1557
Telephone:  310-966-8400
Facsimile:   310-966-8810

BERTRAM FIELDS (SBN 24199)
bfields@ggfirm.com
GREENBERG GLSUKER FIELDS
CLAMAN & MACHTINGER LLP
1900 Avenue of the Stars, Suite 2100
Los Angeles, CA  90067
Telephone:  (310) 553-3610
Facsimile:  (310) 553-0687

Additional counsel listed on following page

Attorneys for Defendant
POM WONDERFUL LLC

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: POM WONDERFUL LLC MARKETING AND SALES PRACTICES LITIGATION<br><br>This Document Relates To:<br>All Actions | ) Case No. 2:10-ml-2199-DDP (RZx)<br>)<br>) **DEFENDANT POM WONDERFUL**<br>) **LLC'S NOTICE OF MOTION AND**<br>) **MOTION TO DECERTIFY CLASS;**<br>) **MEMORANDUM OF POINTS AND**<br>) **AUTHORITIES IN SUPPORT**<br>) **THEREOF**<br>)<br>) Date:      January 27, 2014<br>) Time:      10:00 a.m.<br>) Crtrm.:    3<br>)<br>) [Declarations Of Michelle Lee &<br>) Christopher Ranson filed concurrently] |

MARK E. HADDAD (SBN 205945)
mhaddad@sidley.com
SEAN A. COMMONS (SBN 217603)
scommons@sidley.com
NITIN REDDY (SBN 229451)
nreddy@sidley.com
SIDLEY AUSTIN LLP
555 West Fifth Street, Suite 4000
Los Angeles, California  90013
Telephone:  (213) 896-6000
Facsimile:  (213) 896-6600

THEODORE R. SCARBOROUGH (admitted *pro hac vice*)
tscarborough@sidley.com
SIDLEY AUSTIN LLP
One South Dearborn Street
Chicago, IL 60603
Telephone:  (312) 853 7000
Facsimile:  (312) 853 7036

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE THAT**, before the Honorable Dean D. Pregerson, in Courtroom 3 of the United States District Court for the Central District of California, located at 312 N. Spring Street, Los Angeles, California, Defendant POM Wonderful LLC will and hereby does move the Court under Rule 23 of the Federal Rule of Civil Procedure to decertify the nationwide class on the following grounds and as stated in the accompanying Memorandum of Points and Authorities:

1.      Plaintiffs lack a viable classwide model to prove injury and damages, as required by the Supreme Court's recent decision in *Comcast v. Behrend*, 133 S. Ct. 1426, 1432 (2013).  In the absence of a legally valid model for calculating classwide injury or damages, *Comcast* requires decertification: "No damages model; no predominance, no class certification."  *In re: Rail Freight Fuel Surcharge Antitrust Litig.*, 725 F.3d 244, 253-54 (D.C. Cir. 2013) (citing *Comcast*).

2.      Fact and expert discovery have closed, and it is now clear that Plaintiffs do not know, and have offered no valid methodology to identify, who purchased POM Juice between 2005 and 2010, let alone which of those purchasers actually saw a challenged advertisement.  This problem is compounded by the fact that there is no single advertising claim that, if proven false, would entitle the entire class to recover.  Proceeding to trial with a class of individuals whose very entitlement to class membership, fact of injury, and amount of damages will turn on individual proof and credibility, means individual issues will predominate and that the class action procedure is unmanageable, inferior to alternatives, and would violate the Rules Enabling Act and Due Process.  *E.g.*, *Minkler v. Kramer Labs. Inc.*, No. CV 12-9421, 2013 WL 3185552, at *6 (C.D. Cal. March 1, 2013); *Moheb v. Nutramax Labs. Inc.*, CV 12-3633-JFW (JCx), slip. op. at 8 (C.D. Cal. Sept. 9, 2012); *Davis-Miller v. Auto. Club of S. Cal.*, 201 Cal. App. 4th 106, 114 (2011); *Knapp v. AT&T Wireless Serv., Inc.*, 195 Cal. App. 4th 932, 945 (2011); *Pfizer Inc. v. Super. Ct.*, 182 Cal. App. 4th

1    622, 631-32 (2010).  Moreover, Article III prohibits class actions that include

2    individuals who "were not exposed to the allegedly deceptive representation before

3    they purchased" the product at issue.  *O'Shea v. Epson Am., Inc.*, No. CV 09-8063,

4    2011 WL 4352458, at *11 (C.D. Cal. Sept. 19, 2011); *Avritt v. Reliastar Life Ins. Co.*,

5    615 F.3d 1023, 1034 (8th Cir. 2010).

6         3.    On the full record, and with the benefit of the briefing herein, the Court

7    should now consider whether, and find that, material conflicts of law preclude

8    exporting California law nationwide.  *See Schwartz v. Lights of America*, No. CV 11-

9    1712, 2012 WL 4497398, at *5-9 (C.D. Cal. Aug. 31, 2012) (ruling that, while

10   defendant had not demonstrated choice-of-law conflicts in original briefing,

11   nationwide FAL class could not be certified based on supplemental briefing on

12   choice-of-law).  Allowing a nationwide class to proceed to trial under California law

13   would violate POM's due process right to defend against the claims of class members

14   who reside outside of California based on the materially different state laws that apply

15   to the claims of those class members.  Furthermore, if POM establishes at trial – or on

16   appeal – that the class members who reside outside of California have improperly

17   invoked California law because choice-of-law principles bar their California-law

18   based claims, then by virtue of *res judicata*, these non-California class members will

19   be forever denied any recovery, even if they otherwise could have prevailed had they

20   brought their claims under the laws of their home state.  Plaintiffs should not be

21   allowed to place the vast majority of class members at such a risk, and, for this reason

22   as well, the class should be decertified.

23        4.    The CLRA claims should be decertified because Plaintiffs cannot

24   establish the elements of materiality, reliance, and injury classwide.  *Cohen v.*

25   *DirecTV, Inc.*, 178 Cal. App. 4th 966, 980 (2009); *Tucker v. Pacific Bell Mobile*

26   *Servs.*, 208 Cal. App. 4th 201, 222 (2012); *Caro v. Procter & Gamble Co.*, 18 Cal.

27   App. 4th 644, 668 (1993).

28

2

1    This Motion is based upon this Notice of Motion and Motion, the attached

2  Memorandum of Points and Authorities, the concurrently filed declarations of

3  Michelle Lee and Christopher Ranson, including all exhibits attached thereto, all

4  pleadings and other documents on file with this Court, as well as any other evidence

5  or argument that may be presented before or at the time of the hearing on this Motion.

6    This Motion is made following the conference of counsel pursuant to L.R. 7-3,

7  which took place in person on October 23, 2013.  Plaintiffs oppose this Motion.

8    POM reserves the right to seek to decertify the current class (or any other class),

9  including at or during trial, on different and additional grounds

10                            Respectfully submitted,

11

12  DATED:  November 8, 2013           SIDLEY AUSTIN LLP

13

14                            By:      /s/ Sean A. Commons

15                                 Sean A. Commons
                                   Attorneys for Defendant
16                                 POM WONDERFUL LLC

17

18

19

20

21

22

23

24

25

26

27

28

**POM'S MOTION TO DECERTIFY THE CLASS**

## TABLE OF CONTENTS

**Page**

INTRODUCTION .................................................................................................1

STANDARD........................................................................................................3

ARGUMENT .......................................................................................................3

I.    Plaintiffs' Damages Models Do Not Satisfy *Comcast* And, Therefore,
      The Class Should Be Decertified. ............................................................3

      A.    *Comcast* Requires A Rigorous Examination Of Plaintiffs'
            Classwide Damages Model.............................................................. 4

      B.    Plaintiffs' Damages Models Are Flawed As A Matter Of Law. ........... 5

            1.    The Full-Refund Model ........................................................ 6

            2.    The Price Premium Model.................................................... 7

      C.    Mr. Nolte's Reason For Offering Two Damages Models Further
            Illustrates Why Decertification Is Required. ..................................... 10

II.   Identifying Class Members Eligible To Pursue Relief Would Require A
      Series Of Mini-Trials Regarding Individual Purchases And Exposure. .........11

      A.    No Objective Evidence Exists To Identify Class Members. ............... 12

      B.    Exposure Is An Individualized Inquiry................................................ 14

      C.    Determining Which Class Members Saw Which Advertisements
            Also Will Necessitate Individualized Inquiries. .................................. 18

III.  Conflicts Of Law Preclude Nationwide Application Of California Law........21

      A.    Myriad True Conflicts Matter To The Outcome Of This Case. ........... 22

      B.    Each State Has An Interest In Applying Its Laws To Its Residents. .... 27

      C.    Other States Have A Greater Interest Than California Has................. 28

IV.   At A Minimum, The Court Should Decertify The CLRA Class....................29

CONCLUSION...................................................................................................30

**POM'S MOTION TO DECERTIFY THE CLASS**

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**FEDERAL CASES**

*Adashunas v. Negley*
   626 F.2d 600 (7th Cir. 1980) ........................................................15, 18

*Am. Honda Motor Co., Inc. v. Allen*
   600 F.3d 813 (7th Cir. 2010) ..................................................................4

*Amchem Prods., Inc. v. Windsor*
   521 U.S. 591 (1997).............................................................................11

*Amgen v. Conn. Retirement Plans and Trust*
   133 S. Ct. 1184 (2013).........................................................................30

*Avritt v. Reliastar Life Ins. Co.*
   615 F.3d 1023 (8th Cir. 2010) .......................................................15, 18

*Basic v. Levinson*
   485 U.S. 224 (1988)...............................................................................8

*Binder v. Gillespie*
   184 F.3d 1059 (9th Cir. 1999) ...............................................................8

*Broussard v. Meineke Disc. Muffler Shops*
   155 F.3d 331 (4th Cir. 1998) ...............................................................10

*Bruce v. Teleflora, LLC*
   2:13-cv-03279-ODW-CW, Dkt. # 41, slip op. (C.D. Cal. Sept. 9, 2013)..........22

*Carrera v. Bayer Corp.*
   727 F.3d 300 (3d Cir. 2013) ......................................................4, 12, 14

*Comcast v. Behrens*
   133 S. Ct. 1426 (2013)...............................................................*passim*

*Coopers & Lybrand v. Livesay*
   437 U.S. 463 (1978)...............................................................................3

*Denney v. Deutsche Bank AG*
   443 F.3d 253 (2d Cir. 2006) ...........................................................15, 18

**POM'S MOTION TO DECERTIFY THE CLASS**

*Diacakis v. Comcast Corp.*
  No. C 11-3002
  2013 WL 1878921 (N.D. Cal. May 3, 2013) ...................................................13

*Edgar v. MITE Corp.*
  457 U.S. 624, 102 S.Ct. 2629, 73 L.Ed.2d 269 (1982) ......................................28

*Erica P. John Fund v. Halliburton*
  131 S. Ct. 2179 (2011).............................................................................8

*Frezza v. Google, Inc.*
  2013 WL 1736788 (N.D. Cal. Apr. 22, 2013).................................................22

*Gannon v. Network Tel. Servs., Inc.*,
  No. CV 12-9777,
  2013 WL 2450199 (C.D. Cal. June 5, 2013) ..................................................13

*General Telephone Co. v. Falcon*
  457 U.S. 147 (1982).................................................................................3

*Gianino v. Alacer Corp.*
  846 F. Supp. 2d 1096 (C.D. Cal. 2012).........................................................22

*Gonzalez v. Proctor & Gamble Co.*
  247 F.R.D. 616 (S.D. Cal. 2007) .................................................................21

*Gunnells v. Healthplan Services, Inc.*
  348 F.3d 417 (3rd Cir. 2003)......................................................................9

*Gustafson v. BAC Home Loans Servicing, LP*
  --- F.R.D. ----, 2013 WL 5911252 (C.D. Cal. No. 4, 2013) ...................22, 27, 29

*Halvorson v. Auto-Owners Ins. Co.*
  718 F.3d 773 (8th Cir. 2013) ...................................................................4, 5

*Heindel v. Pfizer, Inc.*
  381 F. Supp. 2d 364 (D.N.J. 2004)...............................................................8

*In re Google Adwords Litig.*
  2012 WL 28068 (N.D. Cal. Jan. 5, 2012)......................................................6, 7

*In re Hotel Tel. Charges*
  500 F.2d 86 (9th Cir. 1974) ......................................................................10

*In re Phenylpropanolamine (PPA) Prods. Liab. Litig.*
   214 F.R.D. 614, 619 (W.D. Wash. 2003). ......................................................14

*In re: Rail Freight Fuel Surcharge Antitrust Litig.*
   725 F.3d 244 (D.C. Cir. 2013) ..................................................*passim*

*Kowalsky v. Hewlett-Packard Co.*
   2012 WL 892427 (N.D. Cal. Mar. 14, 2012) ....................................22

*Leebove v. Wal-Mart Stores, Inc.*
    No. 13-01024 R (SHx), slip op. at 2 (C.D. Cal. Oct. 4, 2013) ........24

*Leyva v. Medline Indus. Inc.*
   716 F.3d 510 (9th Cir. 2013) ...................................................5

*Little v. T-Mobile USA, Inc.*
   691 F.3d 1302 (11th Cir. 2012) ...............................................13

*Maniscalco v. Brother Int'l (USA) Corp.*
   709 F.3d 202 (3rd Cir. 2013) ..................................................28

*Marcus v. BMW of N. Am., LLC*
   687 F.3d 583 (3d Cir. 2012) ...................................................12

*Marlo v. UPS, Inc.*
    639 F.3d 942, 947-48 (9th Cir. 2011) .........................................3

*Mazza v. American Honda Motor Co., Inc.*
   666 F.3d 581 (9th Cir. 2012) .................................................*passim*

*McGhee v. Arabian Am. Oil Co.*
   871 F.2d 1412 (9th Cir. 1989) ................................................28

*McKinnon v. Dollar Thrifty Auto. Group, Inc.*
   2013 U.S. Dist. Lexis 290095 (N.D. Cal. Mar. 4, 2013)...................22

*McLaughlin v. Am. Tobacco Co.*
   522 F.3d 215 (2d Cir. 2008) ...................................................9

*Minkler v. Kramer Labs. Inc.*
   2013 U.S. Dist. LEXIS 90651 (C.D. Cal. March 1, 2013)...........15, 17

*O'Shea v. Epson Am., Inc.*
   2011 WL 4352458 (C.D. Cal. Sept. 19, 2011)...........................15, 18

**POM'S MOTION TO DECERTIFY THE CLASS**

*Pilgrim v. Universal Health Card, LLC*
   660 F.3d 943 (6th Cir. 2011) ...........................................................27, 28

*Ralston v. Mtg. Investors Group, Inc.*
   2012 WL 1094633 (N.D. Cal. Mar. 20, 2012) ...................................22

*Ries v. Arizona Beverages USA LLC*,
   No. 10-01139 RS,
   2013 WL 1287416 (N.D. Cal. Mar. 28, 2013) ...................................6

*Schwartz v. Lights of America*
   2012 WL 4497398 (C.D. Cal. Aug. 31, 2012) ..............................22, 29

*Sikes v. Teleline, Inc.*
   281 F.3d 1350 (11th Cir. 2002) .........................................................9

*Simer v. Rios*
   661 F.2d 655 (7th Cir. 1981) ...........................................................12

*State Farm Mut. Auto. Ins. Co. v. Campbell*
   538 U.S. 408 (2003)...........................................................................27

*UFCW Local 1776 v. Eli Lilly & Co.*
   620 F.3d 121 (2d Cir. 2010) ...............................................................9

*Vaccarino v. Midland Nat. Life Ins. Co.*
   No. CV 11-5858, 2013 WL 3200500 (C.D. Cal. June 17, 2013)........5

*Wal-Mart Stores, Inc. v. Dukes*
   131 S. Ct. 2541 (2011)..............................................................*passim*

*Wallace B. Roderick Revocable Living Trust v. XTO Energy, Inc.*
   725 F.3d 1213 (10th Cir. 2013) .........................................................4

*Weiner v. Snapple Beverage Corp.*
   2010 WL 3119452 (S.D.N.Y. Aug. 5, 2010) ...............................13, 14

*Williams v. Oberon Media, Inc.*
   2010 WL 8453723 (C.D. Cal. Apr. 19, 2010)..................................27

*Xavier v. Philip Morris USA Inc.*
   787 F. Supp. 2d 1075 (N.D. Cal. 2011)......................................12, 14

*Zinser v. Accufix Research Institute, Inc.*
   253 F.3d 1180 (9th Cir. 2001) ......................................................22, 27

v

# CALIFORNIA CASES

*Akkerman v. Mecta Corp.*
   152 Cal. App. 4th 1094 (2007) ..........................................................6, 7

*Alburda v. Thomas Jefferson School of Law*
   Case No. 37-2011-91898-CU-FR-CTL, slip op.
   (Cal. Super. Ct. Oct. 21, 2013) ..............................................................13

*Aryeh v. Canon Business Solutions, Inc.*
   55 Cal. 4th 1185 (2013) ...........................................................................25

*Caro v. Procter & Gamble Co.*
   18 Cal. App. 4th 644 (1993) ...........................................................6, 29

*Cohen v. DirecTV, Inc.*
   178 Cal. App. 4th 966 (2009) .......................................................21, 29

*Davis-Miller v. Auto. Club of S. Cal.*
   201 Cal. App. 4th 106 (2011) ................................................................15

*Hernandez v. Burger*
   102 Cal. App. 3d 795 (1980) .................................................................28

*In re Tobacco II Cases*
   46 Cal. 4th 298 (2009) .................................................................15, 17

*Knapp v. AT&T Wireless Serv., Inc.*
   195 Cal. App. 4th 932 (2011) ................................................................15

*Korea Supply Co. v. Lockheed Martin Corp.*
   29 Cal. 4th 1134 (2003) ...........................................................6, 26

*Mass. Mutual Life Ins. Co. v. Super. Ct.*
   97 Cal. App. 4th 1282 (2002) ...............................................................25

*McCann v. Foster Wheeler, LLC*
   48 Cal. 4th 68 (2010) ...........................................................27, 28, 29

*Mirkin v. Wasserman*
   5 Cal. 4th 1082 (1993) ...............................................................................8

*Moheb v. Nutramax Labs. Inc.*,
   CV 12-3633-JFW (JCx), slip op. at 8 (C.D. Cal. Sept. 9, 2012).....................15

*Offshore Rental Co., Inc. v. Continental Oil Co.*
   583 P.2d 721 (Cal. 1978) ........................................................................... 29

*Pfizer Inc. v. Superior Court*
   182 Cal. App. 4th 622 (2010) ............................................................... 15, 21

*Schuman v. Clark Pest Control of Stockton, Inc.*
   No. A131973, 2013 WL 372806 (Cal. Ct. App. Jan. 31, 2013) ....................... 15

*Sevidal v. Target Corp.*
   189 Cal. App. 4th 905 (2010) ............................................................... 15, 17

*Sullivan v. Oracle Corp.*
   254 P. 3d 237 (Cal. 2011) ........................................................................... 29

*Tucker v. Pac. Bell Mobile Servs.*
   208 Cal. App. 4th 201 (2012) ............................................................... 11, 29

**OTHER STATE CASES**

*Barbara's Sales, Inc. v. Intel Corp.*
   879 N.E.2d 910 (Ill. 2007) ......................................................................... 23

*Garcia v. Medved Chevrolet, Inc.*
   240 P.3d 371 (Colo. App. 2009) ............................................................. 9, 26

*Int'l Union of Operating Eng'rs Local No. 68 Welfare Fund*
    *v. Merck & Co., Inc.*
   929 A.2d 1076 (N.J. 2007) ................................................................ 8, 9, 26

*Kwaak v. Pfizer, Inc.*
   71 Mass. App. Ct. 293 (2008) .............................................................. 9, 26

**CALIFORNIA STATUES**

Cal. Bus. & Prof. § 17208 ............................................................................ 25

Cal. Civ. Code § 1780 ............................................................................ 25, 26

Cal. Civ. Code § 1782 ................................................................................. 24

Cal. Civ. Code § 1783 ................................................................................. 25

Cal. Civ. Proc. Code § 338 .......................................................................... 25

Cal. Civ. Proc. Code § 361 .......................................................................... 25

vii

Cal. Civ. Proc. Code § 3345 ....................................................................26

**OTHER AUTHORITIES**

5-23 Moore's Federal Practice - Civil § 23.45(v)(b)..................................8

Fed. R. Civ. P. 23 ..............................................................*passim*

# **INTRODUCTION**

Much has changed since September 28, 2012, when this Court certified a nationwide class of consumers who purchased POM Juice between October 2005 and September 2010.  Dkt. 111.  When the class originally was certified, Plaintiffs had yet to offer any method for proving classwide damages.  Discovery is now complete, Plaintiffs have retained a damages expert, and the Supreme Court has decided *Comcast v. Behrend*, 133 S. Ct. 1426, 1432 (2013), where it reversed the lower courts for "refusing to entertain arguments against [plaintiffs'] damages model that bore on the propriety of class certification . . . ."  In light of these developments, it is now clear that the class should be decertified.

*Comcast* holds that a damages model must "establish that damages are susceptible of measurement across the entire class for purposes of Rule 23(b)(3)."  *Id.* at 1433.  Here, Plaintiffs and their expert, David Nolte, failed to provide such a model. Their "Full Refund" model is not viable because it assumes, contrary to California law, that a purchaser of a falsely advertised product is entitled to a full refund of the purchase price, with no offset for the value of the product.  This assumption conflicts with California law, which requires an offset for the value received.  POM Juice indisputably provided value to customers, but Plaintiffs' expert has admitted that he does not have a non-speculative means of calculating that value.

Plaintiffs' "Price Premium" model is equally defective.  It too relies on a legally invalid assumption:  that prices for consumer goods sold in retail markets move in the same way as prices for stocks in efficient securities markets.  California bars the use of that assumption in false advertising cases.  And even if that assumption could be used, Plaintiffs' expert has conceded that he cannot calculate a single "but for" price that would generate a price premium applicable to individual class members.  Rather, he has identified at least four different price premiums, but conceded that he has no way of linking any particular premium to any particular class member.  Because Mr. Nolte's model at best identifies a range of possible aggregate damage or restitution

awards, without any way of determining what members of the class are individually entitled to receive, his model is precisely the kind of "Trial by Formula" approach that the Supreme Court rejected in *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2561 (2011), and should be rejected here. *Comcast* thus requires decertification: "No damages model; no predominance, no class certification." *In re: Rail Freight Fuel Surcharge Antitrust Litig.*, 725 F.3d 244, 253-54 (D.C. Cir. 2013).

Plaintiffs' inability to develop a workable damages model exacerbates another fundamental problem: after three years of litigation, Plaintiffs still cannot tell this Court who among 317 million Americans nationwide purchased POM Juice between 2005 and 2010. Plaintiffs' margin of error for estimating the mere *number* of purchasers is larger than the entire 1.5 million member class in *Wal-Mart*, which the Supreme Court observed was one of the "most expansive class actions ever." 131 S. Ct. at 2547. Resolving the threshold question of who purchased POM Juice (let alone how many bottles each individual purchased, at what price, and whether the purchase took place before or after the class period) would require a class-member-by-class-member inquiry. Moreover, now that discovery is complete, the full record confirms that a presumption of exposure is no longer tenable and that Plaintiffs have no method of proving actual exposure with common evidence. As a matter of California law and Article III standing, the class should be decertified because purchasers who were not exposed to an advertisement cannot participate in the class.

Finally, if the Court allows any class to go forward, it must be limited to a class of California purchasers. Material conflicts of law preclude exporting California law nationwide as that would deny POM of its due process right to defend itself under applicable state law. The consequences for class members are equally stark. If POM establishes at trial, or on appeal, that nonresident class members legally erred in invoking California law, then *res judicata* will forever bar them from any recovery, even if they otherwise would have prevailed under the laws of their home state. For these reasons, and the ones below, the Court should decertify the class.

2

1

## <u>STANDARD</u>

2    Plaintiffs bear the burden "to demonstrate that Rule 23's class-certification

3  requirements" remain satisfied on a motion to decertify.  *Marlo v. UPS, Inc.*, 639 F.3d

4  942, 947-48 (9th Cir. 2011) (holding district court "properly placed the burden on"

5  plaintiffs at decertification).  A decision to certify a class is "inherently tentative," and

6  can be revisited at any time, including trial (*Coopers & Lybrand v. Livesay*, 437 U.S.

7  463, 469 n.11 (1978)), because "actual, not presumed, conformance" with Rule 23's

8  requirements is "indispensable."  *Gen. Tel. Co. v. Falcon*, 457 U.S. 147, 160 (1982).

9  Certification is the "exception to the usual rule that litigation is conducted by and on

10  behalf of the individual named parties only," and Rule 23(b)(3) certification, in

11  particular, is an "adventuresome innovation . . . [inappropriate] for situations in which

12  class-action treatment is not as clearly called for."  *Comcast*, 133 S. Ct. at 1432

13  (internal quotations omitted).  Compliance with each of Rule 23's requirements must

14  be "affirmatively demonstrate[d]" upon a "rigorous analysis" of whether "the factual

15  and legal issues comprising the plaintiff's cause of action" are capable of classwide

16  determination.  *Wal-Mart*, 131 S. Ct. at 2551-52.

17

## <u>ARGUMENT</u>

18  **I.   Plaintiffs' Damages Models Do Not Satisfy *Comcast* And, Therefore, The**

19       **Class Should Be Decertified.**

20    Since this Court last addressed class certification, the Supreme Court has held

21  that it is "the court's duty to take a 'close look' at" a plaintiff's model for classwide

22  injury and damages.  *Comcast*, 133 S. Ct. at 1432-33.  Before *Comcast*, "the case law

23  was far more accommodating for class certification" with respect to classwide proof

24  of damages and injury.  *In re: Rail Freight*, 725 F.3d at 255.  "It is now indisputably

25  the role of the district court to scrutinize the evidence [concerning] certification, even

26  when doing so 'requires inquiry into the merits of the claim.'"  *Id.* at 253 (quoting

27  *Comcast* at 1433).  Class plaintiffs must identify a valid methodology "establishing

28  that damages are capable of measurement on a classwide basis" to satisfy Rule

3

23(b)(3) predominance.  *Comcast*, 133 S. Ct. at 1432-33.  If a damages model cannot withstand rigorous scrutiny, then "that is not just a merits issue" – it means a class cannot be certified: "No damages model; no predominance, no class certification."  *In re: Rail Freight*, 725 F.3d at 253 & 54.[1]

### A. *Comcast* Requires A Rigorous Examination Of Plaintiffs' Classwide Damages Model.

As the Supreme Court held in *Comcast*, a damages model must comport both with substantive law and with a theory of liability capable of proof through common evidence.  133 S. Ct. at 1432-33.  For example, while the plaintiffs in *Comcast* presented a model for estimating damages, it was not a model capable of distinguishing whether the damages a class member suffered were traceable to the plaintiffs' sole viable legal theory of classwide liability.  *Id.* at 1431.  The Supreme Court reversed because it is not enough to propose any "method to measure and quantify damages on a classwide basis[;]" that logic would mean that any arbitrary method could suffice, rendering Rule 23(b)(3)'s predominance requirement a "nullity."  *Id.* at 1433.  The Court further noted that, even when a model can identify the fact of injury and damages classwide, the model also must reliably measure the extent of injury for each class member to satisfy Rule 23(b)(3).  *Id.* at 1435 n.6.

Since *Comcast*, numerous courts have denied class certification based on a plaintiff's inability to show a method for proving classwide damages.[2]  These

---

[1] *Comcast* and *In re Rail Freight* did not address the admissibility of the damages models.  Here, however, POM will move to exclude the damages models proposed by Mr. Nolte under *Daubert*, enabling this Court to resolve the question of certification for a separate and additional reason, namely that Mr. Nolte's opinions are unreliable.  *Am. Honda Motor Co., Inc. v. Allen*, 600 F.3d 813, 815-16 (7th Cir. 2010) (holding district courts "must conclusively rule on" *Daubert* motions "prior to ruling on a class certification motion"); *cf. Wal-Mart*, 131 S. Ct. at 2553-54 (doubting "*Daubert* did not apply to expert testimony at the certification stage").

[2] *See Wallace B. Roderick Revocable Living Trust v. XTO Energy, Inc.*, 725 F.3d 1213 (10th Cir. 2013); *Carrera v. Bayer Corp.*, 727 F.3d 300 (3d Cir. 2013); *Halvorson v.*

---

4

decisions confirm that a damages model must be able to distinguish accurately between injured and uninjured persons, and calculate the amount of individual damages. *Compare In re: Rail Freight*, 725 F.3d at 253 *with Leyva v. Medline Indus. Inc.*, 716 F.3d 510, 513-14 (9th Cir. 2013). In *In re: Rail Freight*, for example, the D.C. Circuit held that the class could not be certified because the plaintiffs' damages model "detect[ed] injury where none could exist." 725 F.3d at 252. It yielded damages for persons who could not possibly have been injured by anticompetitive conduct because they had long term contracts that prevented their prices from rising. *Id.* Because of this, the court held there was "no way of knowing" whether "the damages [the] model calculates for class members is" accurate. *Id.* at 254. In *Leyva*, by contrast, the Ninth Circuit affirmed class certification, holding that the mere fact that damages varied from class member to class member did not mean individual issues necessarily predominated. 716 F.3d at 513-14. That class had approximately 500 known employees, and the defendant was able to (and in fact did) calculate each employee's alleged damages down to the dollar based on its own business records. *Id* at 515. None of those factors is present here: the class possibly numbers in the millions, its members remain unidentified, neither the existence nor the amount of damages is calculable from POM's business records, and Plaintiffs have no evidence or methodology that would allow a fact-finder to determine classwide damages.

### B.   Plaintiffs' Damages Models Are Flawed As A Matter Of Law.

This case presents stronger grounds for decertification than *Comcast* and *In re: Rail Freight.* Plaintiffs here offer two models for calculating monetary relief through their proposed expert, Mr. Nolte, but neither complies with the substantive law governing their claims, and neither can be applied to resolve individual claims.

---

*Auto-Owners Ins. Co.*, 718 F.3d 773, 778 (8th Cir. 2013); *Vaccarino v. Midland Nat'l Life Ins. Co.*, No. CV 11-5858, 2013 WL 3200500 (C.D. Cal. June 17, 2013).

### 1.   The Full-Refund Model

Plaintiffs' first damages model provides a full refund for each purchase for class members who can establish that they were exposed to false POM advertisements and that such advertisements resulted in their purchase.  Nolte Rep. at p. 14 (Full Refund model applies to those class members who never would have purchased POM Juice "absent the false advertising") (Declaration of Michelle Lee Ex. 6).  Under this model, a purchaser is awarded the full retail price of POM Juice.  The model provides no offset for value received.  Instead, as Mr. Nolte explained, the model explicitly assumes that, as a matter of California law, no offset needs to be calculated.  Nolte Dep. 142:3-7, 143:4-5 (Lee Decl. Ex. 5).

The Full Refund model fails because Mr. Nolte's understanding of California law is wrong.  He cannot treat POM Juice as a value-less product with an offset of zero.  Restitution under the UCL/FAL, and damages under the CLRA, requires that amounts awarded to an aggrieved party be offset by the value received.  California does not permit economic windfalls, such as "nonrestitutionary disgorgement." *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1152 (2003).  Where plaintiffs cannot reliably prove, on a classwide basis, the amount of restitution or damages net of any applicable offset, California courts routinely deny class certification.  *See Akkerman v. Mecta Corp.*, 152 Cal. App. 4th 1094 (2007) (rejecting UCL/FAL class that would have resulted in "windfall" to class members who received benefits); *In re Google AdWords Litig.*, No. 5:08-CV-3369, 2012 WL 28068, at *15 (N.D. Cal. Jan. 5, 2012) (rejecting UCL/FAL class because the "amount of restitution due must account for the benefits received"); *Ries v. Arizona Beverages USA LLC*, No. 10-01139 RS, 2013 WL 1287416, at *7 (N.D. Cal. Mar. 28, 2013) (decertifying class after plaintiffs failed to establish restitution accounting for value received); *Caro v. Procter & Gamble Co.*, 18 Cal. App. 4th 644, 668-69 (1993) (rejecting CLRA class of orange juice purchasers because class members "would be required individually to prove liability and damages").

**POM'S MOTION TO DECERTIFY THE CLASS**

1   Here, POM Juice has intrinsic value as a natural juice product that, at the very

2   least, provides consumers with calories, hydration, vitamins, and minerals.

3   Consumers purchased POM Juice for a host of reasons unrelated to health, a fact

4   acknowledged by Plaintiffs' expert on marketing. Silverman Dep. 79:13-84:3 (Lee

5   Decl. Ex. 9). Furthermore, several class representatives have continued to buy POM

6   Juice after filing this complaint, and POM's sales have increased notwithstanding

7   POM's decision, three years ago, to halt the challenged advertising, which provides

8   further evidence that POM Juice has intrinsic value notwithstanding the

9   advertisements at issue. Lee Decl. Ex. 4 (summarizing Plaintiffs' testimony).

10   This inherent defect cannot be fixed. Mr. Nolte admitted that he would have to

11   speculate to determine an appropriate offset for each purchase of POM Juice.

12   Accounting for even one benefit of POM Juice, such as hydration, "would have been

13   itself probably speculative because, you know, for example, you have to come up with

14   a replacement product" for each class member's purchases. Nolte Dep. at 141:17-21.

15   Consequently, the Full Refund model "cannot possibly establish that damages

16   are susceptible of measurement across the entire class for purposes of Rule 23(b)(3)"

17   because Plaintiffs cannot reliably prove restitution or damages net of any offset on a

18   classwide basis. *Comcast*, 133 S. Ct. at 1433; *In re Google Adwords Litig.*, 2012 WL

19   28068, at *15; *Akkerman*, 152 Cal. App. 4th 1094.

20   **2.   The Price Premium Model**

21   Mr. Nolte also presents a second damages model for class members who never

22   saw and did not rely upon false advertising: the Price Premium model. Nolte Dep.

23   273:11-16 ("My calculations, I think I have repeatedly said, are not based on an

24   individual class member seeing an ad."). This model assumes that POM's advertising

25   campaign artificially inflated retail prices nationwide. Nolte Rep. at p. 16. The Price

26   Premium model and the core assumption required for it to operate fail as a matter of

27   law for two independent reasons.

28

**POM'S MOTION TO DECERTIFY THE CLASS**

1    *First*, controlling law in California and the Ninth Circuit bars Plaintiffs from

2    obtaining damages or restitution on the theory that false advertising raised market

3    prices because, had the market been informed of the "true facts," the retail price would

4    have been lower.  *Binder v. Gillespie*, 184 F.3d 1059, 1064 (9th Cir. 1999); *Mirkin v.*

5    *Wasserman*, 5 Cal. 4th 1082, 1108 (1993).  The term courts use to describe such a

6    theory of recovery is "fraud-on-the-market."  The theory was first articulated by the

7    Supreme Court in *Basic v. Levinson*, 485 U.S. 224 (1988), for use in private securities

8    fraud class actions.  Under the doctrine, each purchase and sale in an efficient market

9    presumptively reflects all material public information about value.  *Erica P. John*

10   *Fund v. Halliburton*, 131 S. Ct. 2179, 2185 (2011); *Wal-Mart*, 131 S. Ct. at 2552 n.6.

11   In an efficient market, the theory goes, the stock price automatically adjusts to each

12   new public disclosure of material information, because such information

13   presumptively affects the public's demand for the stock.  *See id*.  Mr. Nolte's Price

14   Premium model is a classic example of such a theory because its core assumption is

15   that "[f]alse advertising affects the demand for a product, which in turn increases the

16   quantity demanded at any given price" and ultimately "*increases the market price* paid

17   by all consumers."  Nolte Rebuttal Rep. at 5 (emphasis added) (Lee Decl. Ex. 7).

18       Consistent with virtually every court in the country to consider the issue, the

19   Ninth Circuit and the California Supreme Court have limited the fraud-on-the-market

20   doctrine to "a security that is actively traded in an 'efficient market.'"  *Binder*, 184

21   F.3d. at 1064; *Mirkin*, 5 Cal. 4th at 1108.  Markets for retail goods, in contrast, are

22   "vast, complex, and unpredictable" (5-23 Moore's Fed. Practice - Civil § 23.45(v)(b)),

23   which is why it would be "patently absurd" (*Heindel v. Pfizer, Inc.*, 380 F. Supp. 2d

24   364, 380-81 (D.N.J. 2004)) and "a drastic change to settled law" to apply the fraud-

25   on-the-market presumption of reliance here.  *Mirkin*, 5 Cal. 4th at 1099.  In the quarter

26   century since the Supreme Court first introduced fraud-on-the-market, courts

27   repeatedly and uniformly have refused to apply the doctrine in consumer fraud class

28   actions.  *E.g.*, *Int'l Union of Operating Eng'rs Local No. 68 Welfare Fund v. Merck &*

*Co., Inc.*, 929 A.2d 1076, 1088-89 (N.J. 2007) (rejecting damages theory as the "equivalent of fraud on the market").[3]  The Price Premium model thus fails as a matter of law, and cannot serve as a basis for awarding monetary relief on a classwide basis. *See Comcast*, 133 S. Ct. at 1433; *In re: Rail Freight*, 725 F.3d at 253.

*Second*, even if a fraud-on-the-market theory could apply to a consumer good, the Price Premium model fails because it amounts to an impermissible "Trial by Formula."  *Wal-Mart*, 131 S. Ct. at 2561.  Mr. Nolte does not know what the retail price for POM Juice would have been "but for" the challenged advertising.  He offers no single but-for price to measure the assumed premium.  Nolte Dep. 262:24-265:16.  Rather, he speculates that POM Juice would have sold at a price similar to the price of one of four other juices – what he views as POM's true competitors.  Because those juices differ markedly in price, depending on the chosen alternative, the model generates an aggregate monetary award anywhere between $200 million and $450 million.  *Id.*; Nolte Rep. Ex. 3 at 5.

The problem with this model is that it cannot calculate restitution or damages with reasonable certainty under the facts of this case without violating the law.  To use the model to calculate monetary relief on a classwide basis, a fact-finder would have to select one hypothetical price to apply to every purchase by every class member.  That would require either (1) assuming that every class member would have opted for the same substitute juice but for POM's advertising or (2) selecting a composite price drawn from the four substitutes.  Neither approach is permissible.

---

[3] *UFCW Local 1776 v. Eli Lilly & Co.*, 620 F.3d 121, 133 (2d Cir. 2010); *McLaughlin v. Am. Tobacco Co.*, 522 F.3d 215, 224 (2d Cir. 2008), *abrogated on other grounds by Bridge v. Phx. Bond & Indem. Co.*, 553 U.S. 639 (2008); *Gunnells v. Healthplan Servs., Inc.*, 348 F.3d 417, 435 (4th Cir. 2003); *Sikes v. Teleline, Inc.*, 281 F.3d 1350, 1363-64 (11th Cir. 2002), *abrogated on other grounds by Bridge*, 553 U.S. 639; *Garcia v. Medved Chevrolet, Inc.*, 240 P.3d 371 (Colo. App. 2009); *Kwaak v. Pfizer, Inc.*, 881 N.E.2d 812, 818-19 (Mass. App. Ct. 2008); *Int'l Union*, 929 A.2d at 1088.

9

1    Mr. Nolte declined to (and could not) opine that *every* class member would
2  have selected the exact same substitute juice "but for" POM's advertising.  Nolte Dep.
3  at 267:12-269:7.  That leaves Plaintiffs advocating for a composite price.  Just as the
4  Supreme Court rejected a model that would have calculated an "average backpay
5  award" in *Wal-Mart*, 131 S. Ct. 2561, so must this Court reject an "average price
6  premium" approach.  Indeed, Mr. Nolte's model uses an average of an average; he
7  compares the average retail price of POM Juice with the average retail price of the
8  four substitutes, even though the retail price of POM Juice (and the substitutes) varied
9  materially.  Nolte Dep. 139:18-140:8 (testifying that "Walmart might have lower
10  prices that would be offset by – at least partially offset, maybe even totally offset by
11  smaller retailers that typically are going to charge premium prices").  This is
12  confirmed by the varied prices paid by named Plaintiffs.  *E.g.*, Lee Decl. Exs. 10-11,
13  14, 19 (showing at least 50% variation in retail prices for same-sized POM Juice).

14    Plaintiffs cannot avoid individualized issues by inventing composite prices for
15  composite class members, thereby "allowing gross damages by treating
16  unsubstantiated claims of class members collectively"; that would "significantly
17  alter[] substantive rights" in violation of Rule 23 and the Rules Enabling Act.  *In re
18  Hotel Tel. Charges*, 500 F.2d 86, 90 (9th Cir. 1974); *accord Wal-Mart*, 131 S. Ct. at
19  2561; *Broussard v. Meineke Disc. Muffler Shops*, 155 F.3d 331, 342-43 (4th Cir.
20  1998) (rejecting damages model that depended on a "'fictional' typical" plaintiff).
21  Mr. Nolte's Price Premium model thus fails for this independent reason.

22    **C.    Mr. Nolte's Reason For Offering Two Damages Models Further**
23    **Illustrates Why Decertification Is Required.**
24    The Full Refund and Price Premium models measure distinct harms, depending
25  on whether class members were exposed to and relied upon false advertising – in
26  which case the Full Refund model presumably applies (Nolte Rep. at 14-16; Dkt. 103
27  at 11) – or purchased POM Juice for reasons wholly unrelated to advertising – in
28  which case the smaller Price Premium model applies.  As a result, for Mr. Nolte's

models to be of any use in these class proceedings, some method must exist for distinguishing between Full Refund and Price Premium class members.  Mr. Nolte, however, knows of no such methodology:

> Q.  … Do your models provide a methodology for the trier of fact to determine who's entitled to compensation under the full refund model versus the price premium model?
> ….
> A. That is outside the scope of my engagement.  I have not endeavored to do that.

Nolte Dep. 118:11-19; *see also id*. at 110:9-20.  Mr. Nolte assumed "that other witnesses" would address this question.  *Id.* at 118:18-19.  None has done so, and for good reason:  It is inconceivable how anyone could distinguish, on a classwide basis, between persons who relied on POM advertising from those who did not.  This would require individualized determinations regarding the motivations, state of mind, and knowledge of each class member – factors that courts consistently hold preclude certification.  *E.g.*, *Tucker v. Pac. Bell Mobile Servs.*, 208 Cal. App. 4th 201, 221-229 (2012).  Plaintiffs cannot solve this dilemma by selecting only one model; that would improperly compromise the claims of certain class members in favor of others because the models generate materially different amounts for individual class members.  *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625-26 (1997).  Mr. Nolte's recognition that different class members have distinct injuries based on individual purchasing decisions is yet one more reason why this Court should now decertify this class.  *See In re: Rail Freight*, 725 F.3d at 253.

## II.  Identifying Class Members Eligible To Pursue Relief Would Require A Series Of Mini-Trials Regarding Individual Purchases And Exposure.

Plaintiffs' inability to develop a workable damages methodology compounds a related problem:  Plaintiffs do not know, and lack any reliable methodology to identify, the members of the class.  Other than through mini-trials based on witness credibility, Plaintiffs have no means for identifying who even purchased POM Juice

1  during the relevant period or how much they purchased and what they paid, let alone

2  who was exposed to allegedly false or misleading advertising prior to purchasing

3  POM Juice or what advertisements they saw.  Resolving these essential questions

4  would require mini-trials because, as the named Plaintiffs illustrate, purchasers likely

5  did not keep records of their purchases, and Plaintiffs have provided no other means

6  of identifying class members.  POM is aware of no court that has certified a class in

7  such uncertain circumstances, as these unknowns render any class unmanageable and

8  foreclose a finding of superiority due to the predominance of individual issues and the

9  availability of other means to vindicate class interests.  Decertification thus is justified

10  for these reasons as well.

11  **A.  No Objective Evidence Exists To Identify Class Members.**

12  Even if the Court were to continue to assume, as Plaintiffs have advocated, that

13  every purchaser of POM Juice was exposed to false advertising, Plaintiffs cannot

14  satisfy their threshold burden of identifying who purchased POM Juice.  In the words

15  of class counsel, "This is an **unknown national Class**."  Lee Decl. Ex. 33 (emphasis

16  in original).  After nearly a full year of additional discovery, Plaintiffs still do not

17  know either the identity or the number of members in the class.  They can only

18  speculate that it contains "hundreds of thousands" or possibly "millions" of

19  individuals.  Dkt. 75 at 11:14.  The gap in Plaintiffs' best estimates is larger than the

20  entire 1.5 million person class rejected in *Wal-Mart* as "one of the most expansive

21  class actions ever."  131 S. Ct. at 2547.

22  "Class ascertainability is 'an essential prerequisite of a class action, at least with

23  respect to actions under Rule 23(b)(3).'"  *Carrera,* 727 F.3d at 306 (quoting *Marcus v.*

24  *BMW of N. Am., LLC*, 687 F.3d 583, 592-93 (3d Cir. 2012)); *Simer v. Rios*, 661 F.2d

25  655, 670 (7th Cir. 1981).  Class members must be identifiable "'based on objective

26  criteria,' and a trial court must undertake a rigorous analysis of the evidence to

27  determine if the standard is met."  *Carrera*, 727 F.3d at 305 (quoting *Marcus*, 687

28  F.3d at 593); *Xavier v. Philip Morris USA Inc.*, 787 F. Supp. 2d 1075, 1089-90 (N.D.

Cal. 2011) ("membership must be determinable from objective, rather than subjective, criteria").[4]

Here, Plaintiffs lack a method to determine whether a person is a class member using objective criteria.  Plaintiffs cannot use POM's records because POM did not sell directly to consumers.  Plaintiffs cannot rely on retail sales data to identify individual purchasers because, to the extent such data exists, Plaintiffs never identified or gathered it.  And Plaintiffs cannot rely on class members to have retained receipts for purchases that took place three to eight years ago.  *None* of the named Plaintiffs – who claim to be "typical" of the class – retained even one receipt.  *See, e.g.*, Lee Decl. Exs. 11-13, 18-21, 23, 25, 34-36, 38.

Plaintiffs cannot rely on the memories of class members to fill this void.  The named class representatives could not recall one or more of the following: which size products they purchased, how much they purchased, when they made their first purchases, when they made their last purchases, or how much they paid for each purchase.  *See, e.g.*, Lee Decl. Exs. 11-13, 16-20, 23, 25-27, 34-37.  There is no reason to believe that absent class members would have any better ability to recall these facts. *Weiner v. Snapple Beverage Corp.*, No. 07 Civ. 8742, 2010 WL 3119452, at *13 (S.D.N.Y. Aug. 5, 2010) (concluding that it was "unrealistic" to believe that consumers would "have retained a receipt, bottle label, or any other concrete documentation of" Snapple purchases).  To the contrary, as Plaintiffs' expert Thomas Maronick testified, most consumers do not remember details about everyday purchases for household items:

> Most studies show that most people can't remember
> something that happened two weeks ago.  How much did

---

[4] *E.g.*, *Alburda v. Thomas Jefferson School of Law*, No. 37-2011-91898-CU-FR-CTL, slip op. at 3-4 (Cal. Super. Ct. Oct. 21, 2013) ("objective characteristics and common transactional facts" subject to substantiation) (Lee Decl. Ex. 54); *Little v. T-Mobile USA, Inc.*, 691 F.3d 1302, 1304 (11th Cir. 2012); *Gannon v. Network Tel. Servs., Inc.*, No. CV 12-9777, 2013 WL 2450199, at *2 (C.D. Cal. June 5, 2013); *Diacakis v. Comcast Corp.*, No. C 11-3002, 2013 WL 1878921, at *3 (N.D. Cal. May 3, 2013).

you pay for something?  I don't remember.  Think about consumer behavior in a supermarket.  The consumer is buying, let's say, 50 items.  Are they going to remember how much they paid for each of those 50 items?  Probably not . . . . But again, thinking back to a discrete item it's highly unlikely they're going to remember something back very far at all as to what they paid for it.

Maronick Dep. at 89:13-90:6 (Lee Decl. Ex. 8); *see also id.* at 322:11-324:15, 346:6-348:4.  The quality of a consumer's memory is affected by such factors as whether purchases were routine or infrequent (*id.* at 342:9-343:11), and Mr. Nolte testified that "POM has a very, very low repeat purchase behavior" (Nolte Dep. 48:25).

Because the memories of class members are unreliable, courts around the country have rejected the use of declarations or claim forms to establish class membership, particularly for small-value purchases.  *See Carrera*, 727 F.3d at 308-09; *Marcus*, 687 F.3d at 594; *In re Phenylpropanolamine (PPA) Prods. Liab. Litig.*, 214 F.R.D. 614, 619 (W.D. Wash. 2003) (rejecting the use of affidavits); *Xavier*, 787 F. Supp. 2d at 1089-90 (rejecting use of affidavits); *Weiner*, 2010 WL 3119452, at *13 (rejecting the use of declarations).  Such approaches disregard the "core concern of ascertainability" – "that a defendant must be able to challenge class membership." *Carrera*, 727 F.3d at 309; *Marcus*, 687 F.3d at 594.  Because there is no objective proof of class membership here, "the process of simply identifying who rightfully belongs within the proposed class would entail a host of mini-trials."  *In re PPA*, 214 F.R.D. at 619.  As a result, even if Plaintiffs were to prevail at trial, no class action administrator would be able to determine who was entitled to relief without depriving POM of its right to test a person's eligibility to participate in the class.  That violates Rule 23(b)(3), the Rules Enabling Act, and Due Process.

## B.    Exposure Is An Individualized Inquiry.

The class should be decertified for a separate reason:  The mere fact of purchase is not sufficient to participate in the class.  Plaintiffs must have a methodology for excluding those purchasers who were not exposed to POM's challenged

14

advertisements before making their purchase.  Exposure is critical to class membership.  Even under the broadest reading of California law, class actions under the UCL, FAL, or CLRA cannot include persons who were not exposed to allegedly misleading advertising.  California and Ninth Circuit case law on this point is uniform. *E.g.*, *Sevidal v. Target Corp.*, 189 Cal. App. 4th 905, 929 (2010) (describing issue as "well settled" even after *In re Tobacco II Cases*, 46 Cal. 4th 298 (2009)); *Moheb v. Nutramax Labs. Inc.*, CV 12-3633-JFW (JCx), slip. op. at 8 (C.D. Cal. Sept. 9, 2012) (collecting federal and California authorities requiring exposure); *Minkler*, 2013 WL 3185552, at *8.[5]  Article III independently prohibits class actions that include individuals who "were not exposed to the allegedly deceptive representation before they purchased" the product at issue.  *O'Shea*, 2011 WL 4352458, at *8; *Avritt*, 615 F.3d at 1034 (holding Article III applies to absent class members asserting UCL claims); *Denney v. Deutsche Bank AG*, 443 F.3d 253, 264 (2d Cir. 2006) ("no class may be certified that contains members lacking Article III standing"); *Adashunas v. Negley*, 626 F.2d 600, 604 (7th Cir. 1980).

At class certification, Plaintiffs argued for a presumption of classwide exposure because POM "create[d] a market for the unfamiliar and unpleasant tasting juice" and thus that it is "reasonable to presume that almost every purchase of POM Juice is a result of the demand created through POM's marketing efforts."  Dkt. 103 at § II.A.  On the full record, that presumption no longer withstands the rigorous scrutiny that Rule 23(b)(3) requires.  The presumption is unsupported by expert testimony and conflicts with the conduct of named class representatives and the undisputed records of POM's sales since the challenged advertising stopped.

---

[5] *See also Schuman v. Clark Pest Control of Stockton, Inc.*, No. A131973, 2013 WL 372806 (Cal. Ct. App. Jan. 31, 2013); *Mazza v. Am. Honda Motor Co., Inc.*, 666 F.3d 596 (9th Cir. 2012) (collecting California appellate authorities); *Davis-Miller*, 201 Cal. App. 4th  at 114; *Knapp*, 195 Cal. App. 4th at 945; *Pfizer Inc. v. Super. Ct.*, 182 Cal. App. 4th 622, 631-32 (2010).

**POM'S MOTION TO DECERTIFY THE CLASS**

1  ***No Evidence Supports A Presumption Of Classwide Exposure***.  None of

2  Plaintiffs' experts was able to opine that every class member was exposed to the

3  challenged advertisements (or even the percentage who were exposed).  Silverman

4  Dep. 87:23-88:11, 94:25-97:9, 112:11-24, 152:7-15, 177:9-12; *cf.* Nolte Dep. 273:11-

5  16.  A presumption of exposure also conflicts with Plaintiffs' experts'

6  acknowledgment that consumers purchase products for any number of reasons

7  unrelated to advertising, including product placement, impulse and the like.

8  Silverman Dep. 79:13-80:7, 81:8-12; O'Bryan Rebuttal Rep. at 4-5 (Lee Decl. Ex.

9  29); Lancaster Rep. at 8 ("it has long been understood that promotion and advertising

10  typically are the weakest in terms of influence on sales") (Lee Decl. Ex. 30).

11  POM's sales records establish that consumers purchase POM Juice for reasons

12  other than exposure to the challenged advertising.  If Plaintiffs were right that false

13  advertising alone drove all sales of POM Juice, then sales should have collapsed after

14  the allegedly false advertising ceased around the end of 2010.  In the ensuing three

15  years, however, the price of POM Juice has risen and so have sales.  O'Bryan Rebuttal

16  Rep. at 4 & n.23 ("Sales increased from 433.5 million ounces in 2010 to 447.1 million

17  ounces in 2011 and 571.8 million ounces in 2012.").  In addition, several of the named

18  Plaintiffs have continued to purchase POM Juice after filing this litigation, decisively

19  refuting the presumption that consumers purchase POM Juice only due to the

20  allegedly false advertising.  *Id.* at 4-6; *see also* Lee Decl. Ex. 4.  Plaintiffs'

21  presumption of classwide exposure thus cannot stand.

22  ***Exposure Cannot Be Inferred From A "Uniform" Message.***  Plaintiffs also

23  sought to justify a presumption of exposure by asserting that the hundreds of

24  advertisements at issue are interchangeable and, therefore, as long as class members

25  saw one advertisement, they effectively saw them all.  Dkt. 103 at 10 (relying on

26  claim that 70-90% purchased POM for general "health").[6]  But even if the

27

28  _____

[6] Plaintiffs double-counted survey responses to reach the 90% figure.  Dhar Rep. at

16

advertisements contained a uniform message (and they did not), that still does not answer the questions of *who* saw the advertisement prior to purchasing POM Juice or *how* exposure could be established with common evidence.  Both are necessary for a case to proceed as a class action.  *Mazza*, 666 F.3d at 596; *Sevidal*, 189 Cal. App. 4th at 929; *Minkler*, 2013 WL 3185552, at *6.

  ***There Is No Actual Evidence Of Classwide Exposure.***  Without a presumption, Plaintiffs cannot establish classwide exposure.  Plaintiffs' experts could not opine that every class member was exposed to POM advertisements.  Silverman Dep. 87:23-88:11, 94:25-97:9, 112:11-24, 152:7-15, 177:9-12; *cf.* Nolte Dep. 273:11-16.  Their marketing expert, Mr. Silverman, went the furthest and merely opined that POM's advertising created millions of "impressions."  Impressions, however, are not the same as actual exposure; impressions estimate the theoretical number of times an advertisement could have been seen, not the number of times it actually was seen.  Silverman Dep. 147:6-18, 148:22-149:10, 150:17-21.  This point was emphasized by Mr. Silverman himself, who testified that he was not opining on how many class members actually saw the advertisements.  *Id*. at 152:7-15, 87:23-88:11, 94:25-97:9, 112:11-24, 177:9-12.  Mr. Silverman also could not establish that the number of impressions here was comparable to the level at issue in *In re Tobacco II Cases*, 46 Cal. 4th 298 (2009).  POM's advertising covered only a five-year period (not "decades" as in *Tobacco II*) and represents "only six one-hundredths of one percent (0.06%) of cigarette advertising and promotional spending."  Lancaster Rep. at 4-5.

  Discovery has closed, and the only evidence on exposure remains the surveys taken by POM, which show that nearly 60% of POM consumers ***did not*** see or ***could not*** recall seeing a POM advertisement (Reibstein Rep. at 199 (Lee Decl. Ex. 31); O'Bryan Rebuttal Rep. at 4 (summarizing same)), and only 3.8% mentioned

---

nn.6-7 (explaining arithmetical error) (Lee Decl. Ex. 31).  Approximately 30% did not cite health.  *Id.*

advertising as a reason for purchasing POM Juice (Dhar Rep. at H-9).[7]  Plaintiffs attack the reliability of those surveys, but attacks on Defendant's evidence do nothing to carry Plaintiffs' burden to prove classwide exposure.

\*     \*     \*

In short, the theories Plaintiffs offered for presuming classwide exposure have proven untenable.  Because Plaintiffs have failed to provide a mechanism to remove individuals who were never exposed to a POM Juice advertisement from the class, decertification is required.  *Mazza*, 666 F.3d at 596; *O'Shea*, 2011 WL 4352458, at \*8; *Avritt*, 615 F.3d at 1034; *Denney*, 443 F.3d at 264; *Adashunas*, 626 F.2d at 604.

### C.     Determining Which Class Members Saw Which Advertisements Also Will Necessitate Individualized Inquiries.

At class certification, Plaintiffs ignored the specific express and implied claims in the advertisements at issue, and instead generalized the content of the advertisements to invent an imagined common denominator of "health."  Dkt. 103 at 10 (relying on claim that 70-90% purchased POM for general "health").  The fiction of a "uniform" message is revealed by Plaintiffs' own statements and actions over the past year.  And without the ability to point to a uniform message throughout the class period that, if proven false, would entitle the entire class to recover, Plaintiffs cannot possibly proceed with this case as a class action.

Since certification, Plaintiffs have changed their position and acknowledged that the challenged POM Juice advertisements make different claims.  Returning to the actual allegations of the complaint, Plaintiffs' draft class notice identifies *nine different* categories of allegedly false claims:

---

[7] Even among survey respondents who cited "health," a clear majority (69.2%) cited general health only; 4.7% cited specific health reasons and 26.1% cited both a mix of general and specific reasons.  Dhar Rep. ¶¶ 11, 43.  Furthermore, of the minority who indicated "specific" health reason, only 9.4% actually identified a particular health condition, and only 5.3% identified a condition referenced in the MCC.  Instead, many cited vitamins, that juice is good for you, the absence of additives.  *Id.* at ¶ 46.

1
2
3
4
5
6

> [T]he Plaintiffs claim that through advertising and product labeling, POM misleads consumers into believing that its 100% Juice Products: (1) can result in improved blood flow to the heart; (2) decrease arterial plaque by 30%; (3) prevent or reduce the risk of prostate cancer and disease; (4) are proven to help people stay young, delay aging and extend life; (5) reduce, treat and prevent arthritis, [6] dementia, [7] Alzheimer's Disease and [8] diabetes; and [9] are better than all other pomegranate juices

7
8

Notice at p. 3 § 4 (Lee Decl. Ex. 33). And this summary downplays other variations in POM's advertising. *See* Declaration of Christopher Ranson ¶¶ 36-39, 56-71.

9
10
11
12
13
14
15
16
17
18
19

Likewise, Plaintiffs' post-certification approach to proving up liability confirms that the advertisements conveyed different messages. Plaintiffs recognize the need to disprove specific health claims because no one can dispute that POM Juice – like other 100% natural fruit juices – is generally "healthy." *See* Silverman Dep. 49:13-15. Plaintiffs have retained five experts from different medical fields to offer opinions about the alleged falsity of specific health claims, not whether POM Juice is generally "healthy."[8] In fact, in opposition to POM's summary judgment motions, Plaintiffs repeatedly denied that this case is about "health" or whether POM Juice is "good for you," and instead emphasized that their theory is that POM falsely promoted POM Juice as "preventing and healing serious disease" through "more specific claims" about "*specific* health benefits …." Dkt. 215 at 2:9-25 (emphasis in original).

20
21
22
23
24
25

Even if Plaintiffs had clung to the fiction of a uniform message, the diversity of messages in POM's advertisements, some of which do not relate to health, confirms that Plaintiffs cannot prove liability by proving uniform exposure to one false advertising message:

26
27
28

---

[8] Jonathan Stampfer, M.D. (heart disease, lung cancer, and prostate cancer); Jeffrey Blumberg, Ph.D. (atherosclerosis, heart attacks; prostate and other forms of cancer; aging and age-related disorders); Mohit Khera, M.D. (erectile dysfunction); Marc Garnick, M.D. (prostate cancer); Frank Sacks, M.D. (cardiovascular disease).

**POM'S MOTION TO DECERTIFY THE CLASS**







Ranson Decl. Ex. 1 (Bates Nos. DL00264343, MDL 264653, MDL 00264647 and

MDL 00264372).  No one could plausibly claim these advertisements convey the

same message.  To the contrary, Silverman admitted that consumers who saw only the

100% pure ads "probably wouldn't come away with a health benefit" message from

the ads.  Silverman Dep. at 130:10-25.  Thus, resolving the truth or falsity of one

1  advertisement could not resolve the truth or falsity of any other advertisement.  Not

2  even the FTC considered POM's advertisements to be uniform.  That is why, of the

3  hundreds of advertisements at issue here, the FTC staff challenged only 39 (along with

4  4 media interviews), and found no fault with four.  *In re POM Wonderful LLC et al.*,

5  Dkt. No. 9344 (Jan. 10, 2013).  If POM's advertisements contained only one message,

6  the FTC would not have chosen only one tenth of the advertisements to try, and would

7  not have exonerated four.

8        Because the truth or falsity of each advertising claim must be addressed on its

9  own, even if Plaintiffs could establish that every class member saw or relied on one of

10  the challenged claims, individual issues still would predominate because a fact finder

11  still would have to determine which class-member saw which claim, and whether it

12  was material to a purchasing decision.  Courts routinely deny class certification in

13  UCL, FAL, and CLRA cases where advertisements conveyed distinct messages,

14  particularly where, as here, some of the advertisements during the same time period

15  contained no allegedly false message at all.  *See Pfizer*, 182 Cal. App. 4th at 631-32;

16  *Cohen v. DirecTV, Inc.*, 178 Cal. App. 4th 966, 980 (2009); *Gonzalez v. Proctor &*

17  *Gamble Co.*, 247 F.R.D. 616, 626 (S.D. Cal. 2007) (denying class certification of

18  UCL, FAL and CLRA class where "Plaintiff's allegations depend on multiple sources

19  of representations by Defendant that a large portion of the proposed class may not

20  have ever been exposed to or relied upon"); *see also supra* n.5 (authorities rejecting

21  certification of UCL, FAL, or CLRA class due to existence of multiple written and

22  oral representations).  For this reason as well, the class should be decertified.

23  **III.   Conflicts Of Law Preclude Nationwide Application Of California Law.**

24        For each of the above reasons, and in light of *Comcast*, the Court should

25  decertify the class in its entirety.  Were the Court nonetheless to allow Plaintiffs to

26  proceed with the class, then, at a minimum, the Court should revisit the question of

27  whether California law can properly apply nationwide.  The last time the Court

28  addressed this issue, the Court found the record was not fully developed on the factors

**POM'S MOTION TO DECERTIFY THE CLASS**

1    bearing on choice-of-law.  While many courts since then have held as a matter of law

2    that nonresidents cannot pursue UCL, FAL, and CLRA claims,[9] POM provides the

3    analysis that establishes why those decisions apply with equal force here.  *See*

4    *Schwartz v. Lights of America*, 2012 WL 4497398, at *5-9 (C.D. Cal. Aug. 31, 2012)

5    (ruling that, while defendant had not demonstrated choice-of-law conflicts in original

6    briefing, nationwide FAL class could not be certified based on supplemental briefing

7    on choice-of-law).  Were the Court to proceed to try the claims of a nationwide class,

8    it would deny POM its due process right to present available defenses under

9    applicable state law, and would expose the non-California plaintiffs to having their

10   claims extinguished should the choice-of-law ruling be reversed after a trial on the

11   merits.  Accordingly, the nationwide class should be decertified.  *Zinser v. Accufix*

12   *Research Institute, Inc.*, 253 F.3d 1180, 1188 (9th Cir. 2001) (individual issues

13   "compound[] exponentially" in a nationwide class).

14       A.    **Myriad True Conflicts Matter To The Outcome Of This Case.**

15       Numerous material conflicts inevitably would arise at trial that bear on the

16   burden, available remedies, or the right to pursue any relief.[10]  To assist the Court in

---

17

18   [9] Those courts so held regardless of whether the defendant was based in California.
     *See, e.g.*, *Bruce v. Teleflora, LLC*, 2:13-cv-03279-ODW-CW, Dkt. # 41, slip op. (C.D.
19   Cal. Sept. 9, 2013) (dismissing UCL and CLRA claims asserted against one of POM's
     sister corporations) (Lee Decl. Ex. 52); *accord Gustafson v. BAC Home Loans*
20   *Servicing, LP*, --- F.R.D. ----, 2013 WL 5911252, at *5-8 (C.D. Cal. No. 4, 2013);
     *McKinnon v. Dollar Thrifty Auto. Group, Inc.*, No. 12-4457, 2013 WL 791457, at *4-
21   6 (N.D. Cal. Mar. 4, 2013); *Frezza v. Google, Inc.*, No. 5:12-cv-00237, 2013 WL
22   1736788, at *6 (N.D. Cal. Apr. 22, 2013); *Schwartz*, 2012 WL 4497398, at *5-9; *see*
     *also, e.g.*, *Ralston v. Mortg. Investors Group, Inc.*, No. 5:08-cv-00536, 2012 WL
23   1094633, at *3 (N.D. Cal. Mar. 30, 2012); *Kowalsky v. Hewlett-Packard Co.*, No.
24   5:10-cv-02176, 2012 WL 892427, at *7-8 (N.D. Cal. Mar. 14, 2012); *Gianino v.*
     *Alacer Corp.*, 846 F. Supp. 2d 1096, 1103 (C.D. Cal. 2012).
25

26   [10] *Mazza*, 666 F.3d at 591-92; *Gustafson*, 2013 WL 5911252, at *5-8 (differences in
     pre-filing notice, statute of limitations, availability of class procedures, and remedies
27   held "material," "not trivial"); *Schwartz*, 2012 WL 4497398, at *5 (differences in
28   private right of action, *scienter*, reliance/causation, scope, and remedies held

---

**POM'S MOTION TO DECERTIFY THE CLASS**

this analysis, POM attaches three appendices that detail the conflicts on (1) a state-by-state basis, (2) an issue-by-issue basis, and (3) using the facts of nonresident named Plaintiffs.  Lee Decl. Exs. 1, 3, 4.  These appendices confirm that it would be impossible to conduct a single trial that could account for all of the legal differences raised by the claims of individual class members, some of whom purchased POM Juice in multiple states, as California's choice of law rules require.  Below POM highlights several material conflicts that alone are sufficient to warrant decertification of the nationwide class.

*Private right of action / representative actions*:  Sixteen jurisdictions would bar a private class action for monetary relief.  Lee Decl. Ex. 3 at pp. 1-2.  This conflict alone would remove up to one-third of the states from the class.

*Scienter/mens rea requirements*:  The UCL and FAL do not require *scienter / mens rea*, and the CLRA does for only 2 of 25 types of claims.  In contrast, at least 17 states require intent to deceive or induce reliance, knowledge, lack of due care, reckless disregard, gross negligence, or an intermediate degree of intent; at least 9 require intent in cases of concealment or omission; and at least 6 require intent for certain forms of misconduct.  Lee Decl. Ex. 3 at pp. 3-4.  These conflicts encompass two-thirds of the states in the class and impact the burden of proof at trial.

*Reliance/causation*:  Numerous states require causation and reliance for absent class members, and at least 32 states impose a higher burden of proof by requiring absent class members to establish actual reliance, proximate cause, or other proof that conduct induced them to act or refrain from acting.  Lee Decl. Ex. 3 at pp. 5-7.  At least 9 states require proof of causation or reliance to support awards of monetary relief.  *Id.* at p. 7.  And certain states do not permit an "inference of 'common reliance.'"  *E.g.*, *Barbara's Sales, Inc. v. Intel Corp.*, 879 N.E.2d 910, 919 (Ill. 2007)

---

material); *Gianino*, 846 F. Supp. 2d at 1101 (differences regarding injury, *scienter*, fraud/deception, statute of limitations, standing, pre-filing notice, class relief, actual damages, restitution, equitable relief, and punitive damages held material).

**POM'S MOTION TO DECERTIFY THE CLASS**

(characterizing different rules on inferences of reliance as just one "outcome-determinative" conflict between Illinois and California).  As a result, whereas Plaintiffs contend California law requires reliance only under the CLRA, this conflict would require Plaintiffs to prove that all unnamed class members, prior to purchase, read and relied upon one or more advertisement to obtain *any* monetary relief.

*Injury/damages/ascertainable loss requirements*:  At least 34 states require proof of actual or "substantial" injury, damages, economic damages, "pecuniary loss," "ascertainable loss," or "mental anguish" as either an essential element of a consumer fraud claim or as a precondition for monetary relief.  Lee Decl. Ex. 3 at pp. 8-9.  Class members in more than two-thirds of the states who could not meet these tests would not recover *any* monetary relief.

*Consumer requirements*:  Unlike the UCL and FAL, at least 4 states bar recovery for business purchases.  Lee Decl. Ex. 3 at p. 13.  The CLRA is limited to "consumer" purchases, but other states that impose consumer limitations define "consumer" differently.  *See id.*  These conflicts further complicate determining whether individual class members are entitled to any monetary relief.  *See, e.g.*, *Leebove v. Wal-Mart Stores, Inc.*, No. 13-01024 R (SHx), slip op. at 2 (C.D. Cal. Oct. 4, 2013) (individualized issues predominated due to need to determine whether credit card was issued for a "consumer" or "business" purpose) (Lee Decl. Ex. 53).

*Notice requirements*:  The UCL and FAL do not require notice to pursue private claims, and the CLRA permits notice after the filing of an action.  Cal. Civ. Code § 1782.  In contrast, at least 10 states require notice prior to litigation, and an 11th requires "a reasonable attempt to resolve" claims prior to certain suits.  *See* Lee Decl. Ex. 3 at p. 18.  Under the laws of those states, those class members would be barred from obtaining any relief.

*Prohibited conduct*:  POM is not aware of any other state consumer protection statute that "borrows" violations of essentially every state, local, and federal statute, as well as potentially court or administrative decisions, as *per se* violations.  This conflict

24

alone could prove case-dispositive for nonresidents, as the lone summary judgment motion filed by Plaintiffs rests on the UCL's unlawful prong and is predicated on a non-final decision by a federal administrative agency.  Dkt. 179.  This conflict is compounded here because (1) the UCL contains a catch-all for "unfair" conduct, whereas other states limit liability to fraudulent or deceptive conduct, or define "unfair" more narrowly; and (2) several states do not have open-ended "general fraud" statutes like the UCL and FAL.  Lee Decl. Ex. 3 at pp. 10-12, 14.  Such differences could further eliminate or limit POM's potential liability at trial.

*Statutes of limitations and tolling*:  Plaintiffs seek to recover for all purchases within 5 years of the filing of these actions.  Dkt. 111 at 13.  CLRA and FAL claims have 3-year limitations period (Cal. Civ. Code § 1783, Cal. Civ. Proc. Code § 338(a), (h)), but the UCL has a 4-year period (Cal. Bus. & Prof. § 17208), and Plaintiffs can use the UCL to extend the limitations period for CLRA and FAL claims to 4 years. UCL and FAL claims are subject to tolling for delayed discovery (*Aryeh v. Canon Business Solutions, Inc.*, 55 Cal. 4th 1185, 1196-97 (2013), and plaintiffs will contend CLRA claims are as well (*Mass. Mutual Life Ins. Co. v. Super. Ct.*, 97 Cal. App. 4th 1282, 1295 (2002)).  At least 26 states have shorter limitations periods of one to three years.  Lee Decl. Ex. 3 at 15-17.  Limitations periods in at least 7 states also run from the date of *occurrence*, not discovery.  *Id.*  And states that permit tolling employ different tolling standards.  *Id.*  These conflicts will affect a substantial majority of class members.  The named plaintiffs, for example, all seek to recover for more than one year's worth of purchases, and some all the way up to 5+ years.  Lee Decl. Ex. 4. Plaintiffs cannot avoid these conflicts because, as a matter of statute, California applies the shortest limitations and tolling period to claims brought by nonresidents for injuries outside of California.  Cal. Civ. Proc. Code § 361.

*Monetary relief*:  The UCL and FAL provide for restitution, not damages. *Korea Supply*, 29 Cal. 4th at 1152.  The CLRA provides for actual damages of at least $1,000 in class actions, restitution, punitive damages (Cal. Civ. Code § 1780(a)(1)-(5),

(e)) and, in certain cases involving senior citizens or disabled persons, statutory damages up to $5,000 (Cal. Civ. Code §§ 1780(b), 3345).  The remedies available in other jurisdictions vary wildly.  Some states authorize actual or compensatory damages, emotional distress damages, costs of investigation, minimum statutory damages, double or treble damages, enhanced actual or statutory damages, and punitive or exemplary damages.  But monetary relief under the laws of other states often is available (i) only in the discretion of a court or jury; (ii) only for intentional, knowing, reckless, aggravated, oppressive, repeated, willful, and/or bad faith conduct, (iii) only for certain classes of persons; (iv) subject to sharing recoveries with the state; (v) subject to certain maximum caps; (vi) with the caveat that class actions are limited to actual damages; (vii) with the caveat that class actions for damages are limited to narrowly-defined violations not applicable here; (viii) subject to good faith defenses; and/or (ix) subject to a defendant's right to a reverter of amounts not returned to class members.  Lee Decl. Ex. 3 at pp. 19-26.  Unlike under the CLRA, at least 9 states either do not authorize punitive damages or require proof "beyond a reasonable doubt," rather than clear and convincing evidence.  *See id.*  No fact finder could account for all of these permutations for millions of class members.

   ***Fraud on the market***:  If the Court were to hold that California permits fraud-on-the-market as a damages theory for consumer goods, then an outcome determinative conflict would exist with the laws of other states, none of which have or appear likely to ever permit that theory outside of the securities context.  *E.g.*, *Int'l Union*, 929 A.2d at 1088; *Kwaak*, 881 N.E.2d at 819; *Garcia*, 240 P.3d at 380.

   ***Different defenses***:  The 9 separate defenses to monetary relief summarized above represent just a sample of the types of unique defenses available under the laws of other states, but not available under California law, and which could dramatically change the result at trial.  For example, the parties' experts disagree on whether scientific studies support certain advertised health claims.  In states where POM can

**POM'S MOTION TO DECERTIFY THE CLASS**

1   invoke "good faith" as a defense, POM's reasonable faith in its experts' conclusions

2   could produce a defense verdict not available under California law.

3   **B.      Each State Has An Interest In Applying Its Laws To Its Residents.**

4   The second step under California's choice-of-law test is satisfied for two

5   reasons.  First, every state has an interest in applying its laws to claims asserted by its

6   residents for purchases made within its borders based on advertisements received

7   within its borders.  *Mazza*, 666 F.3d at 590; Lee Decl. Ex. 1 (collecting authorities

8   affirming the interests of states in applying their laws to their residents in row titled

9   "Choice of Law").[11]   Second, in cases relating to advertising, every state has an

10  interest "in protecting [out-of-state] companies from what the [] state view[s] as

11  excessive liability" to attract "out-of-state companies to do business within the state

12  . . . and to advance the opportunity of state residents to obtain . . . products and

13  services offered by out-of-state companies."  *McCann v. Foster Wheeler LLC*, 48 Cal.

14  4th 68, 91-92, 93 (2010).  Both of these interests are implicated here.  Each state has a

15  right to set the "the correct balance" between "consumer and business welfare," and

16  that right would be defeated if the UCL, FAL, and CLRA supplanted local laws

17  nationwide that bar or limit relief against POM.  *Mazza*, 666 F.3d at 592; *McCann*, 48

18  Cal. 4th at 91-92.  That is so even if the conduct in question was carried out only "in

19  part" within the state's borders.  *Gustafson*, 2013 WL 5911252, at *7.

20

21

22

23  ---

[11] *E.g.*, *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 422 (2003) ("each

24  State may make its own reasoned judgment about what conduct is permitted or

proscribed within its borders"); *Zinser*, 253 F.3d at  1187 ("every state has an interest

25  in having its law applied to its resident claimants"); *Williams v. Oberon Media, Inc.*,

26  No. CV 09-8764, 2010 WL 8453723, at *8 (C.D. Cal. Apr. 19, 2010) ("Each of the

fifty states has an interest in the application of its laws to its residents…."); *Pilgrim v.*

27  *Universal Health Card, LLC*, 660 F.3d 943, 947 (6th Cir. 2011) (collecting circuit

28  authorities upholding interest of each state in applying it laws to claims by residents).

1

**C.      Other States Have A Greater Interest Than California Has.**

2      The final step of California's choice-of-law analysis confirms that California

3 law should not apply here.  The question is which state's interests would be more

4 impaired if the laws of another state applied.  The question is not which state has

5 adopted the "better" or "worthier" policy, but "which jurisdiction should be allocated

6 the predominating lawmaking power under the circumstances …."  *McCann*, 48 Cal.

7 4th at 96-97.  Under controlling precedent, each state "has 'the predominant interest'

8 in regulating conduct that occurs within its borders, and in being able to assure

9 individual and commercial entities operating within its territory that applicable

10 limitations on liability set forth in the jurisdiction's law will be available to those

11 individuals and businesses in the event they are faced with litigation in the future."  *Id.*

12 at 97-98 & n.12; *Mazza*, 666 F.3d at 593.[12]

13      Here, the interests of other states "in establishing a reliable rule of law" for in-

14 state activities – both to protect their residents and promote business – merit

15 substantial weight.  *McCann*, 48 Cal. 4th at 98.  The interests of other states would be

16 "significantly undermine[d]" if they could not "provide any reasonable assurance –

17 either to out-of-state companies [such as POM] or to [local] businesses" – that

18 limitations on liability will protect activities within their borders in the future.  *Id.*;

19 *Mazza*, 666 F.3d at 594 (holding interests of foreign states would be more impaired);

20 *see also supra* nn.10-11.  Their "interest in promoting freedom of investment and

21

22

_____

23 [12] *Hernandez v. Burger*, 102 Cal. App. 3d 795, 799-803 (1980) ("the place of the
   wrong has the predominant interest"); *McGhee v. Arabian Am. Oil Co.*, 871 F.2d

24 1412, 1425-26 (9th Cir. 1989) (holding jurisdiction where alleged fraud occurred
   controls); *accord Edgar v. MITE Corp.*, 457 U.S. 624, 644 (1982) (a state "has no

25 legitimate interest in protecting nonresident" consumers); *Maniscalco v. Brother Int'l
   (USA) Corp.*, 709 F.3d 202, 208-210 (3rd Cir. 2013) (holding interests of place of

26 residence outweighed state where defendant was headquartered); *Pilgrim*, 660 F.3d at

27 946 ("[T]he State with the strongest interest … is the State where the consumers …
   are harmed").

28

1  enterprise within [their] borders" is considered "vital" for choice-of-law purposes.

2  *Offshore Rental Co., Inc. v. Continental Oil Co.*, 22 Cal. 3d 157, 168 (1978).

3       In contrast, California has at most an "attenuated" interest in applying its law to

4  nonresidents. *Gustafson*, 2013 WL 5911252, at *8. A person who has never lived in

5  California would never imagine at the time of purchase that she could invoke

6  California law, so California has no legitimate interest in enabling her to do so after

7  the fact. *McCann*, 48 Cal. 4th at 99. To the contrary, California has a presumption

8  against extraterritorial application of its statutes. *Sullivan v. Oracle Corp.*, 51 Cal. 4th

9  1191, 1207-09 (2011) (holding UCL did not apply to employment claims by

10  nonresidents for work performed outside California even when working for "a

11  California-based employer"). In particular, California has no compelling interest in

12  providing nonresidents with both greater and lesser relief than would be available

13  under the laws of their home states. And while POM is headquartered here,

14  California's interests in regulating POM can be fully vindicated without exporting

15  California law nationwide. *Schwartz*, 2012 WL 4497398, at *7-8.

16                                    *       *       *

17       Thus, the Court should follow the overwhelming weight of authority, and rule

18  that California's choice-of-law rules require nonresidents to pursue claims under the

19  laws of other states. *See supra* n.9. Due process bars allowing a nationwide class to

20  proceed under California law. The nationwide class thus should be decertified.

21  **IV.    At A Minimum, The Court Should Decertify The CLRA Class.**

22       The Court should decertify the CLRA class. It is settled that "actual reliance

23  must be established for an award of damages under the CLRA." *Cohen*, 178 Cal.

24  App. 4th at 980. Actual reliance requires proof that an allegedly false statement was

25  material to a consumer's purchasing decisions. *Id.* Where, as here, materiality or

26  reliance will "vary from consumer to consumer," a CLRA claim "is not subject to

27  common proof, and the action is properly not certified as a class action." *Tucker*, 208

28  Cal. App. 4th at 222; *see also Caro*, 18 Cal. App. 4th at 668-69 (affirming denial of

1    class certification under the CLRA because "consumers – who thought they were

2    buying different products such as 'premium,' 'fresh,' or 'from concentrate' orange

3    juice based upon their personal assumptions about the nature of the products they

4    wanted to buy and upon reading various portions of the labels – would be required

5    individually to prove liability and damages"); *accord Amgen v. Conn. Retirement*

6    *Plans and Trust*, 133 S. Ct. 1184, 1193 (2013) (the requirement that "plaintiffs

7    establish reliance would ordinarily preclude certification of a class action seeking

8    money damages because individual reliance issues would overwhelm questions

9    common to the class.").

10          Here, Plaintiffs cannot show materiality or reliance on a classwide basis.

11    Plaintiffs' expert agrees that consumers purchased POM Juice for a host of reasons,

12    including those unrelated to health.  *See* Silverman Dep. 79:13-84:3; *see also* Hrg. Tr.,

13    8/13/2013 at 78 ("I think everyone would agree that we have a product that is not

14    bought for just one purpose.").  Nor does it make sense to presume reliance or

15    materiality here.  To take but one example, there is no reason to presume that a young,

16    single woman would find claims concerning prostate cancer material, let alone that

17    she would purchase POM Juice *because of* an advertisement about prostate cancer.

18    For this reason, the Court should decertify the CLRA class.

                                    **<u>CONCLUSION</u>**

20          For the foregoing reasons, and the reasons set forth in POM's original

21    opposition to certification, POM requests that the Court decertify the nationwide class.

22    DATED:  November 8, 2013              SIDLEY AUSTIN LLP

24                                  By:    _____*/s/ Sean A. Commons*_____
                                          Sean A. Commons
25                                        Attorneys for Defendant
                                          POM WONDERFUL LLC

                                          30